CORNELIUS MACARDELL et al., as Administrators of the Estate of CORNELIUS MACARDELL, Deceased, on Behalf of Themselves and Other Stockholders of the HOUSTON AND TEXAS CENTRAL RAILWAY COMPANY, Appellants, *v.* FREDERIC P. OLCOTT et al., Respondents.

1. APPELLATE DIVISION — DECISION UNANIMOUS, ALTHOUGH PART OF JUSTICES CONCUR IN RESULT ONLY — AMENDMENT. A decision of the Appellate Division in which all of the justices concur is a unanimous decision, although part of the justices concur in result only, and when the order and judgment entered upon such decision do not show that it was unanimous, the Appellate Division, at a subsequent term, although composed in part of different justices, may, upon proper and sufficient evidence of the fact, amend the order and judgment so as to show that the decision was unanimous.

2. ACTION BY STOCKHOLDER TO VACATE FORECLOSURE SALE AND ANNUL REORGANIZATION AGREEMENT UPON GROUND OF FRAUD — JUDGMENT DISMISSING COMPLAINT NOT REVERSIBLE UPON ISSUE NOT PRESENTED OR TRIED. In an action brought by a stockholder of a rail-

road company in behalf thereof, the company being unwilling to act, against various defendants, among which were another railroad company and its agents, who were in possession of the property of the former company under a foreclosure sale in the United States Circuit Court and a re-organization agreement under which the defendant company also secured the stock of the company organized to succeed the first company, it was alleged that the foreclosure and sale of the property of the first company was illegal and procured by fraud in pursuance of an unlawful conspiracy between the defendant railroad company, which owned and controlled the majority of the capital stock of the first company, and persons having control of the first company, so that its rights and legal defenses in the foreclosure action were waived and abandoned, whereby the defendant company was enabled to obtain, under the foreclosure sale and the re-organization agreement, the property of the first company and the stock of the re-organized company without adequate consideration and in prejudice of the rights of the plaintiff and other stockholders of the first company; the prayer for relief demanded judgment that the various steps in the foreclosure action and proceedings subsequent thereto, by which the result complained of had been accomplished, be declared illegal and void, and that the defendants restore to the first company the property which had been taken from it and the proceeds thereof. Upon the trial the question whether the proceedings and judgment in the foreclosure action were fraudulent and collusive or honest and valid was the important issue litigated, and the trial court decided, upon the proofs submitted, that the judgment in foreclosure was not procured by means of fraud and collusion, and that it was valid and conclusive upon the parties in the foreclosure action and as against the plaintiff and other stockholders of the first company in the present action, and directed judgment dismissing the complaint upon the merits; this judgment has been unanimously affirmed by the Appellate Division, and on the appeal from its decision the appellant abandons the charge of fraud and admits the validity of the judgment of foreclosure and the title obtained by the purchasers thereunder, but seeks to overthrow the judgment upon the ground, not previously raised or litigated, that there should be impressed upon the interest of the defendant company in the property of the first company and the stock of the re-organized company a trust obligation as a majority stockholder in the first company to account for the profits and advantages which it now holds to the exclusion of the plaintiff and other minority stockholders of the first company. *Held,* that the action having been tried and determined upon the issues framed by the pleadings, the Court of Appeals has no power to reverse the judgment and order a new trial upon an entirely distinct and different cause of action.

*MacArdell* v. *Olcott,* 104 App. Div. 263, affirmed.

(Argued June 5, 1907; decided October 29, 1907.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 24, 1905, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward M. Shepard, A. J. Dittenhoefer, David Gerber, Russell H. Landale* and *H. Snowden Marshall* for appellants. All facts necessary to a reversal were established without controversy, and only questions of law are presented. The question of law whether, upon such uncontroverted facts, the decision below was right, is fully within the jurisdiction of this court. (*Miller* v. *N. Y. & N. S. Ry. Co.,* 183 N. Y. 123.) The decision appealed from was not unanimously affirmed by the Appellate Division. (*Keyes* v. *Smith,* 183 N. Y. 376; *Kaplan* v. *N. Y. B. Co.,* 151 N. Y. 171; *Perez* v. *Sandrowitz,* 180 N. Y. 397; *Laidlaw* v. *Sage,* 158 N. Y. 73; *Warn* v. *N. Y. C. & H. R. R. R. Co.,* 163 N. Y. 525; *Westerfield* v. *Rogers,* 174 N. Y. 230; *Salmon* v. *Gedney,* 75 N. Y. 479.) The amendment of the order does not sufficiently prove that the original order of affirmance was unanimous in the sense in which that word is used in section 191, subdivision 4, of the Code of Civil Procedure. (*Buckingham* v. *Dickinson,* 54 N. Y. 682; *Health Dept.* v. *Dassori,* 159 N. Y. 245; *Guernsey* v. *Miller,* 80 N. Y. 181; *N. C. Bank* v. *N. Y. G. E. Bank,* 97 N. Y. 645; *Salmon* v. *Gedney,* 75 N. Y. 479; *Bohlen* v. *M. E. R. Co.,* 121 N. Y. 546; *Matter of K. C. E. R. R. Co.,* 78 N. Y. 383; *Matter of Mayor, etc., of New York,* 139 N. Y. 140.) The decision of Justice Truax, while in short form, was a special decision, and should not be treated as similar to the general verdict of a jury. Whether the affirmance was unanimous or not, this court has full power to review. (*Miller* v. *N. Y. & N. S. Ry. Co.,* 183 N. Y. 123; *Amherst College* v. *Ritch,* 151 N. Y. 282.) The Southern Pacific Company

occupied towards the plaintiff and minority stockholders similarly situated the same trust relation that was occupied to those stockholders by the directors and officers of the Houston and Texas Central Railway Company. Therefore, no question of fraud is involved, and there was no necessity of proving fraud. The position occupied by the Southern Pacific Company disabled it from obtaining an advantage at the expense of the minority stockholders. (*F. L. & T. Co.* v. *N. Y. & N. Ry. Co.*, 150 N. Y. 410; *Ervin* v. *O. R. & N. Co.*, 27 Fed. Rep. 625; *Jackson* v. *Andrews*, 98 N. Y. 672; *C. Ins. Co.* v. *N. Y. & H. R. R. Co.*, 187 N. Y. 225; *Mumford* v. *E. D. Co.*, 111 Fed. Rep. 639; *Matter of Aultman*, 98 Penn. St. 505; *Menier* v. *H. T. Works*, L. R. [9 Ch. App.] 350.) The reasoning of the court at Special Term was erroneous. (*Ervin* v. *O. R. & N. Co.*, 27 Fed. Rep. 625; *Barry* v. *Brune*, 71 N. Y. 262; *L. I. & T. R. R. Co.* v. *Swannell*, 157 Ill. 616.) The reasons given by the Appellate Division for the affirmance were clearly erroneous. (*Bennett* v. *Austin*, 81 N. Y. 308.) The plaintiffs are entitled to an accounting from the Southern Pacific Company. (*Emery* v. *Pease*, 20 N. Y. 62; *Colrick* v. *Swinburne*, 105 N. Y. 503, 507; *Collins* v. *Butler*, 179 N. Y. 156, 162; *Hughes* v. *Harlem*, 37 App. Div. 528, 529; 166 N. Y. 427; *Bell* v. *Gillere*, 30 N. Y. S. R. 219; 134 N. Y. 616.)

*Adrian H. Joline* and *Maxwell Evarts* for respondents. It has been conclusively adjudicated as a fact in this case that the decree of sale was made and the proceedings thereunder were had without fraud, collusion or wrongful conduct on the part of the defendants or any of them. (*Amherst College* v. *Ritch*, 151 N. Y. 282; *Consolidated Co.* v. *A. T. Co.*, 161 N. Y. 610; *Marden* v. *Dorthy*, 160 N. Y. 45; *People ex rel. M. Ry. Co.* v. *Barker*, 152 N. Y. 417; *Rosenstein* v. *Fox*, 150 N. Y. 354; *Kaplan* v. *N. Y. B. Co.*, 151 N. Y. 171; *Reid* v. *McCord*, 160 N. Y. 330; *Kennedy* v. *M. H. & F. Traction Co.*, 178 N. Y. 508; *Genet* v. *D. & H. C. Co.*, 170 N. Y. 278.) The Circuit Court of the United States for the

Eastern District of Texas had complete jurisdiction of the parties and of the subject-matter in the consolidated cause wherein the decree of foreclosure and sale was rendered, and that decree cannot be reviewed in this suit. (*Carey* v. *H. & T. C. Ry. Co.*, 52 Fed. Rep. 671; *Gernsheim* v. *Olcott*, 7 N. Y. Supp. 872; *Hunt* v. *Hunt*, 72 N. Y. 217; *Herring* v. *E. R. R. Co.*, 105 N. Y. 370; *Vilas* v. *P. & M. R. R. Co.*, 123 N. Y. 440; *Brown* v. *Nichols*, 42 N. Y. 26; *Hawkins* v. *Glenn*, 131 U. S. 319; *Sanger* v. *Upton*, 91 U. S. 56; *Foster* v. *M. C. & L. M. R. R. Co.*, 146 U. S. 88; *P. R. R. Co.* v. *M. P. Ry. Co.*, 12 Fed. Rep. 641.) The plaintiffs' intestate did not establish his right to bring this suit as a stockholder within the rule laid down by the courts. (*Foster* v. *M. C. W. & L. M. R. R. Co.*, 146 U. S. 88; Cook on Corporations [4th ed.], § 646; *Roberts* v. *N. Y. & N. E. R. R. Co.*, 64 N. Y. S. R. 167; *Hawes* v. *Oakland*, 104 U. S. 450; *Wood* v. *Carpenter*, 101 U. S. 143; *Evers* v. *Watson*, 156 U. S. 527; *Credit Co.* v. *Ark. Cr. Co.*, 15 Fed. Rep. 46.)

Hiscock, J. The appellants' intestate was the minority holder of a large amount of the capital stock of the Houston and Texas Central Railway Company which will be called the Houston Company. The respondent Southern Pacific Company, indirectly and through its control of other corporations, was the holder of a majority of the stock of said company. In substance, the appellants claim upon this appeal that the Southern Pacific Company on a foreclosure sale of the property of the Houston Company under and in accordance with a re-organization plan to which the former company was a party, acquired property, to wit, the capital stock of the re-organized company, which because of its relation as majority stockholder it should be decreed to hold as trustee for the proportionate benefit of the appellants as minority stockholders, and that since upon uncontroverted facts this relief has been denied a new trial should be granted.

Before reaching the merits of this claim appellants are compelled to avoid what purports to be a unanimous affirmance

by an Appellate Division of a judgment dismissing their complaint upon the facts. This they seek to do by the argument, in the first place, that because of special circumstances the decision of the Appellate Division is not to be regarded as unanimous, and, secondly, that even if the decision be regarded as unanimous, the decision of the trial court shows that it did not pass upon the issues involved in this action, and they are, therefore, still open for consideration by this court.

I think that the appellants must fail in their contention upon these latter points. But if this is not so, I think that they must fail upon the merits upon this appeal, for the reason that their present claims to relief are based upon a theory so absolutely and widely at variance with that upon which their action was commenced and tried that we cannot make them a basis for a new trial.

In order that we may consider the questions of law which are involved, it will be necessary to make a review of the facts, which at best will be somewhat extended, although there is practically no dispute concerning them.

The Houston Company was the owner of a railway consisting of three divisions, with rolling stock, and also the beneficiary of extensive land grants. It had executed to various trustees seven mortgages securing nearly $20,000,000 of bonds. It also had a floating indebtedness of about $3,000,000. Most of these mortgages — and the prior ones — covered respectively only one or two divisions of the road. None of them, with the exception of one securing an inconsequential amount of bonds, contained express provision for foreclosure and sale for the entire principal amount of bonds upon a default in payment of interest or of other provisions short of a default in the payment of said principal, but they did contain provisions that the trustee might enter and take possession of the road until satisfaction was secured of payments in default. The road failed to meet its obligations under these mortgages, and foreclosure of several thereof was commenced. The company served answers, taking advantage of the provisions of the mortgage, which prevented a

sale for the entire principal amount of the bonds. In addition suit was commenced against the company on a large amount of floating indebtedness and receivers therein appointed. In short and without unnecessary recapitulation of all the details, the affairs of the road were in a most unfortunate and much confused condition, with a practical deadlock between various conflicting interests which prevented a solution and betterment of the situation.

Under these circumstances a re-organization agreement was entered into between the Southern Pacific Company, which, as I have already stated, was indirectly the majority holder of the stock of the Houston Company, the bondholders secured by the various mortgages referred to and various other parties, the Houston Company itself and plaintiffs' intestate not being parties thereto. This agreement in its general outline provided for a foreclosure and sale of the land and railroad property belonging to the Houston Company, and the transfer of this property to a new corporation to be organized, and which should issue bonds to replace the old ones outstanding, of which latter, however, the principal amount and rate of interest should be scaled down, and the execution of mortgages upon the railroad property and lands to secure all or part of these new bonds. Said agreement also provided for the issue of $10,000,000 of capital stock of the new corporation, and it is in connection with this new capital stock that the appellants now make complaint against the Southern Pacific Company and seek to hold it as a trustee for their benefit.

It was provided in respect to this stock as follows :

*First.* That the stockholders in the old company respectively should be entitled to a *pro rata* share of the capital stock of the new company upon payment of a like respective *pro rata* amount of the money necessary to pay the re-organization expenses, and the amounts to be paid to old bondholders in connection with the reduction of the principal and rate of interest of their bonds, and the $3,000,000 of floating indebtedness.

*Second.* That if and so far as the stockholders did not see fit to exercise this privilege, the floating debt creditors should be entitled to their respective *pro rata* shares of the new capital stock upon payment of like respective *pro rata* shares of the same re-organization expenses and the amounts to be paid old bondholders as above indicated.

*Third.* That if and in so far as old stockholders and floating debt creditors did not avail themselves of the right to take new capital stock, the Southern Pacific Company should be entitled to take the same, providing for the expenses of re organization and the payments to old bondholders above mentioned.

It will be noticed that the substantial difference between the rights of the Southern Pacific Company and of plaintiffs' intestate in respect to acquiring stock in the new company was that the former was not compelled to provide for the payment of the floating indebtedness of the old company, while the latter was compelled to contribute thereto. It is, however, to be noted in this connection as bearing somewhat upon the merits that the Southern Pacific Company was to guarantee the new bonds to be issued, and that it was the majority stockholder, and in control of corporations holding about $2,300,000 of the $3,000,000 of the floating indebtedness.

After this agreement was made suits upon remaining mortgages were commenced against the Houston Company, and such proceedings taken in them and in the old suits that thereafter, without opposition upon the part of said company, upon a trial had in the United States Circuit Court of Texas, a judgment of foreclosure and sale was rendered as upon a default upon the principal of the outstanding bonds for a sale of the entire property of the mortgagor, including the lands granted to it. These lands were bid in by the defendant Olcott, and thereafter a new corporation was formed and the provisions already recited with respect to the transfer to it of the property of the old company, the issue of new bonds and the execution of new mortgages were carried out. The defendant Olcott still holds title to so much of the lands as

have not been sold, and as seems to be assumed upon all sides, in trust for the benefit of the new corporation if there be any equity over and above the mortgages executed thereon.

Neither the minority stockholders of the old company nor the floating debt creditors exercised the privilege secured to them respectively under the re-organization agreement of taking stock in the new corporation, and the result was that the Southern Pacific Company secured the entire issue upon the terms already recited. While not especially material, it appears that the amount which appellants' intestate would have been compelled to contribute per share as a condition of taking the new stock would have been a substantial sum.

The important facts developed down to this point in the history of the railroad company and of subsequent proceedings which are especially emphasized in the present claims of the appellants, are that the Southern Pacific Company was indirectly the majority stockholder and in control of the Houston Company; that the re-organization agreement made by the Southern Pacific Company and others which contemplated a foreclosure and sale was followed by the cessation of opposition upon the part of the Houston Company to such foreclosure and sale, and subsequently by a sale of all of its property; that the Southern Pacific Company by such re-organization agreement secured to itself upon more advantageous terms than were offered to other stockholders, the right to acquire all the capital stock of the new railroad company and which capital stock represented all of the rights and equity which the old company and its stockholders had in the property originally belonging to it, and which property, by means of the foreclosure and sale, had been transferred to the new company which issued the capital stock.

Thereafter this action was commenced, and because of the view already indicated that it does not comprehend within its scope the cause of action by minority stockholders to impress a trust upon property acquired by a majority stockholder which appellants are now urging, it becomes necessary to consider at some length the complaint.

The latter is entitled in behalf of plaintiffs' intestate and all other stockholders similarly situated. It alleges the ownership by the Houston railway corporation (called in the complaint "Company No. One") of the various properties involved and the control of said company by the Southern Pacific Company and the former defendant Huntington; the formation of a scheme and conspiracy by these persons and other confederates, the various defendants, to acquire for themselves and the Southern Pacific Company said properties; that in pursuance of this scheme and conspiracy various acts were done and especially certain bills for the foreclosure of mortgages were filed, defenses available to the company abandoned, it being under the control of the conspirators, and a decree finally entered for the sale of all its properties in disregard of the rights of the plaintiff and other stockholders, and which decree was "non-judicial and void as against the defendant company number one and the stockholders thereof;" that in pursuance of the scheme and conspiracy the properties of the company were sold under this decree and bid in by various defendants; that after said sale and in pursuance of the unlawful scheme and combination a new company was organized to which was conveyed part of the property of the company number one bid off as aforesaid, and various mortgages were executed upon the property bid off to cloud the title of company number one, and the entire capital issue of the new company was turned over to the control of the Southern Pacific Railway Company, Huntington and other confederates; that some of the defendants still held title to the lands and property bid off but that they had no right thereto and held the same for the benefit of and in equity and right as trustees for the said company number one. Said complaint then contains allegations of a demand by plaintiffs upon the directors of said company number one "to take action to remove the cloud upon the title to said lands caused by the said trust indentures, to have them declared invalid and to reclaim said lands to and for said company number one and to compel an accounting

by said Olcott (one of the defendants) of and for the said lands and to compel him to convey the said lands to said company number one and to obtain the relief sought to be secured by this action," and that " said directors have failed, neglected and declined to commence any action or any proceeding whatever, and that they are acting with and in the interests of defendants," etc.

The prayer for relief is especially significant as indicating the character of the action. It demands judgment that each one of certain defendants be decreed " to hold and possess for the benefit of and as trustee for the Houston and Texas Central Railway Company (said company number one) and its stockholders " the land acquired " under the so-called decree of foreclosure and sale ; " that various defendants be required to account for all proceedings in connection with the lands bid off or the sales thereof and the proceeds received from such sales and be directed to pay over to the said Houston and Texas Central Railway Company (said company number one) all proceeds received and to convey to said company all lands remaining unsold ; that the mortgages executed by various defendants upon the property bid off upon the foreclosure sale be declared void and " a cloud upon the title of the Houston and Texas Central Railway Company (said company number one) " and that they be canceled and discharged of record ; that all rents, issues and profits realized be paid over and all lands remaining unsold be conveyed by the various defendants to said Houston and Texas Central Railway Company (said company number one).

The nature and character of the cause of action set forth in this complaint are perfectly well defined and familiar. It was one by stockholders in behalf of a corporation which on account of hostile control was unable or unwilling to act, against various defendants who by fraud and conspiracy had stripped the corporation of its property, to have declared illegal and void various steps and proceedings by which this process had been accomplished and to compel a restitution to the injured corporation of the property and proceeds thereof

which had been taken from it. It was distinctly and decisively a stockholder's action in behalf of and for the benefit of the corporation.

It is also apparent as it seems to me that an essential element in plaintiffs' cause of action was the alleged fraudulent and collusive character of the decree of foreclosure and sale under and by which the property of the original company was taken from it and transferred and passed to the various other parties and defendants, and which decree is especially considered in the decision of the trial court next to be referred to.

This decision in favor of the defendants upon the issues raised by the various answers to this complaint was in the so-called short form. The grounds stated for such decision were in effect that the United States Circuit Court "had complete jurisdiction of the subject-matter (of said foreclosure sale) and of the parties, and that its decree and the sale thereunder were final and conclusive as against all the parties of record in that action and as against the plaintiff herein and all others similarly situated; that the purchasers at such sale acquired a good and valid title to the property so sold, which title was not and is not subject to any trust for the benefit of the plaintiff or of other stockholders of said railway company; that such decree was made and the proceedings therein were had without fraud and collusion or wrongful conduct on the part of the defendants or any of them."

It appears that upon appeal to the Appellate Division an opinion was written by one of the justices in favor of affirmance of the judgment appealed from and upon somewhat different grounds than those adopted by the trial justice, and that while all of the remaining justices concurred, two of them did so only in the result. The order and judgment as originally entered did not indicate that the decision was unanimous, and thereafter, by a court composed in part of different justices than those who took part in the decision, an order was made amending the order and judgment theretofore entered so as to show that the decision was unanimous.

With this statement of what seem to be the important facts gathered from a voluminous record, we reach a discussion of the questions of law involved, and which already have been briefly outlined.

The assertion by the appellants that they are not confronted by a unanimous decision rests upon the propositions, *first*, that a concurrence in the result by one or more justices does not make a unanimous decision; and, *secondly*, that the Appellate Division at a subsequent session with different justices sitting could not determine that each individual justice taking part in the original decision concurred therein and direct an amendment of the order and judgment so as to show unanimity in the decision; moreover, that such amendment altered the scope and effect of the original decision.

We have had occasion so frequently to pass upon the first of these propositions adversely to the views of appellants that it is not necessary to discuss it now. We also have had occasion to decide that at a later term of the Appellate Division, composed in part of different justices, an amendment may be made of an order and judgment of the court so as to show that the decision was unanimous, and the present argument does not persuade me that there is any objection as matter of law to such amendment upon proper facts. It is requisite that there should be presented to the court sufficient evidence to convince it that as a matter of fact the decision was unanimous by the concurrence of each individual justice, and this fact being established by proper means, I see no more difficulty in such instance in so amending the records of the court as to correct an inadvertence and make them conform to the truth, than would arise in the other cases conceded by counsel to present proper grounds for similar relief.

The next claim of appellants to be considered relates to the form and effect of the decision made by the trial court. This claim is that a decision in the short form does not so far have the effect of a general verdict that it is to be affirmed if a single ground can be found upon which it may rest; that inasmuch as the Code provided that a decision in such form

should concisely state the grounds of the decision, we may look beyond the decision itself to such grounds and if they fail to support the decision or show that the court has not passed upon any or all of the real issues involved, such decision should not be allowed to stand ; that in this case the main ground stated by the trial court for its decision. is that the judgment of foreclosure and sale already sufficiently described and the sale thereunder were valid and effective ; that the validity of that judgment is not a sufficient ground for deciding this case against appellants, but that their cause of action is independent of its validity, and that, therefore, and inasmuch as there are material issues which have not been passed upon, the appellants are entitled to a new trial within the principles laid down in *Miller* v. *N. Y. & N. S. Ry. Co.* (183 N. Y. 123) ; that the examination of these questions is not barred by a unanimous affirmance. Without considering or deciding how far we should adopt appellants' views that the unanimous affirmance of the decision of the trial court does not preclude us from examining the statement of the grounds given for the latter in order to determine whether they do sustain it, and from giving relief if they do not, I think that an answer may be made upon the merits to appellants' contention with respect to the sufficiency of the grounds stated for the decision.

It is necessary to revert briefly to the complaint and to remember that as outlined thereby this action was brought in behalf of the Houston Company to recover back to it property and the proceeds of property which had been secured from it by the defendants through fraud and conspiracy. While various other steps in this fraudulent conspiracy are alleged, the main and absolutely essential one was the judgment of foreclosure and sale whereby the company was divested of the title to the property in question, and the same was transferred and passed to the various defendants. If plaintiffs were correct that this judgment was brought about by fraud and was part of a conspiracy to defraud the company and its stockholders of property which belonged to them, then it may be conceded, certainly for the sake of the argument at

this point, that such judgment, however regular and valid upon its face, would not be a bar to success under the complaint which was filed. Upon the other hand, if that judgment was valid, honest and in all respects binding and effective, I do not see how plaintiffs could reach beyond it to recover back to the company the property which had been purchased under it. The question whether it was fraudulent and collusive or honest and valid was made an issue of fact in the case. The ground or finding stated in the decision was to the effect that the court had full jurisdiction of the subject-matter and of the parties; "that said decree was made and the proceedings therein were had without fraud, collusion or wrongful conduct on the part of the defendants or any of them;" and "that the purchasers at such sale acquired a good and valid title to the property so sold, which title was not and is not subject to any trust for the benefit of the plaintiff or of other stockholders of said railroad company."

It seems to me that this was the statement of a sufficient reason for deciding that the plaintiffs could not succeed in the action which they had brought.

With the disposition of the foregoing questions we are brought to the final one, whether appellants in this action can urge any such claims to relief as those which they make the basis of their appeal. If, under their complaint, they are entitled to adopt the theory and urge the claims to relief which they now do adopt and urge, then certainly they may say with much force that the real issues which they are presenting do not appear specifically to have been passed upon. And, therefore, my final duty will be to demonstrate that their present theory and claims are so at variance with their complaint that they cannot be asserted in this action, and, therefore, cannot successfully be urged as a reason for reversing the judgment and granting a new trial to pass upon them.

To recapitulate somewhat, if a careful consideration and analysis has enabled me to correctly appreciate the very elaborate and able argument made in behalf of appellants, their present contention in effect is that the Southern Pacific

Company was a majority holder of stock in the original Houston Company ; that as such it procured a foreclosure and sale of the property of that corporation ; that as a party to the re-organization agreement which accompanied that fore-closure and sale it secured to itself upon more advantageous terms than were permitted to the minority stockholders the right to acquire the capital stock of the new Houston Com-pany and which capital stock represented all of the equity and rights which the old company and its stockholders had in the property which was sold and transferred; that as a majority stockholder said Southern Pacific Company owed such duties to the minority stockholders, including appellants' intestate, that now it may be compelled to allow them to share with it in the profits and advantages which it has derived from the sale of the property and the acquisition of the new capital stock.   The defendant Olcott as the present holder of the title to the land grants may be dismissed from consideration, for the capital stock acquired by the Southern Pacific Com-pany is assumed to represent any equity in that land.

In this contention the appellants have abandoned their com-plaint of fraud and collusion and conspiracy amongst the defendants against the corporation, whereby the latter has been stripped of its property, and inferentially they assume the validity of these steps and transfers as against the cor-poration because they insist upon sharing with the Southern Pacific Company the advantages which it has secured thereby. In their brief they specifically affirm the validity and binding effect of the judgment of foreclosure and sale and do not dis-pute that a good and valid title to property was obtained thereunder.   In their own words " The plaintiffs seek — noth-ing more is necessary for them upon the present appeal — to impress upon the interest of the Southern Pacific Company in the shares of the new company and in the lands a trust obligation to account for profits to its associate stockholders."

Thus the action now outlined and proposed is simply one by the appellants as minority stockholders in their own interest directly and solely against the Southern Pacific Com-

pany as a majority stockholder based upon an alleged trust relationship between them to compel the latter to account directly to the former for profits and advantages which it now holds to their exclusion in violation of such relationship. It is true that there may be found here and there in the briefs some chance expression respecting the corporation and its rights, but interpreted as a whole the claims of the appellants bear the construction and are of the nature indicated.

Is there any place for doubt that such cause of action and such form of relief lie far outside the nature and limits of an action brought in behalf of a corporation against many defendants as alleged workers of fraud and conspiracy whereby the corporation has been stripped of its property, to annul and get rid of the wrongful proceedings and collusive transfers and to recover back to the corporation itself the property of which it has been unlawfully deprived?

It is urged that all of the facts have been proven which sustain appellants' present claim and that a court of equity will not be technical or narrow in administering justice according to the rights of the parties upon all the facts proven. Of course I do not lose sight of these well-settled principles. But the facts which are now relied upon, so far as we are advised or have been able to ascertain, were properly admitted under a complaint which alleged a certain cause of action and without amendment or notice of any new theory of the action which was to be tried and the trial court has made a decision which, as it seems to me, passes upon the issues which were framed by that complaint and the answers to it. Under such circumstances there must be limitation to the power of the court to give redress upon the facts which have been proven, and I am aware of no authority which would permit it to utilize facts introduced under a complaint to sustain one well-defined cause of action as a basis upon appeal for an entirely distinct and different cause of action. Such a course would be unjust and it is fully settled that it may not be followed.

The views which have been thus expressed lead to the conclusion that the judgment should be affirmed, with costs.

Edward T. Bartlett, J. (dissenting).  I am unable to vote for the judgment of affirmance about to be pronounced.  In view of the complicated state of facts contained in a lengthy record it is difficult to express within reasonable limits the grounds of dissent.  The leading facts will bring out clearly the important question in this case.

The original plaintiff (now deceased and represented by his administrators) brought this representative action as a minority stockholder of the Houston and Texas Central Railroad Company on behalf of himself and all other stockholders similarly situated.  This original company is hereafter referred to as Houston Company No. 1, and the new company formed under the same name in pursuance of a re-organization agreement as Houston Company No. 2.  Houston Company No. 1, prior to 1885, owned and operated certain lines of railroad in the state of Texas with an aggregate capital stock of some $2,726,900, and a bonded indebtedness of more than $18,000,000, secured by seven mortgages; the portion of the road covered by each mortgage it is unnecessary to point out at this time; it suffices to say that only under one mortgage securing $1,500,000 could there be a sale of the property by reason of non-payment of interest.  In 1883 a corporation known as Morgan's Louisiana and Texas Railroad and Steamship Company acquired a majority of the capital stock of Houston Company No. 1; later the Southern Development Company acquired a majority of the stock of Morgan's Company and thus secured the control of Houston Company No. 1.

The defendant Huntington was the president and in control of a corporation known as the Southern Pacific Company and a large controlling stockholder of the Southern Development Company.  The result was that Huntington and his associates by means of their control of Morgan's Company elected the officers and directors of Houston Company No. 1; thereupon the stock belonging to Morgan's Company, which included a majority of the stock of the Houston Company No. 1, was transferred to the Southern Pacific Company.  It

is unnecessary to go into the details of the procedure that placed Houston Company No. 1 in the hands of a receiver under a judgment recovered upon defaulted coupons amounting to $600,000.

Foreclosure suits were instituted on the various mortgages and receivership extended to them, although six of those mortgages were not foreclosable to the extent of selling the property. The inability to sell led to the adoption of a re-organization agreement which resulted in a sale, by consent of majority of bonds, of the entire property to pay more than $19,000,000 of principal when only $1,500,000 was due under the terms of the mortgages.

A new corporation, the Houston Company No. 2, was formed and Olcott, the purchaser at the sale under the agreement, transferred to it the railroad property, except the lands he purchased which represented land grants to the old company by the state of Texas. Under trust indenture, executed by Olcott and Downs, a purchaser of some of these lands, they were to be sold and the proceeds a' lied to the payment of the bonds of Company No. 2, issued in place of bonds of Company No. 1. It thus appears that the holder of the majority of the stock of Houston Company No. 1, the Southern Pacific Company, participated in the re-organization proceedings and received substantial benefits thereunder. On the other hand, the minority holders of the stock of Houston Company No. 1, not being parties to the re-organization scheme, had no right to be heard, and were, indeed, subjected to terms that were essentially prohibitive. Houston Company No. 2 issued $10,000,000 of stock, and it was provided that the Southern Pacific Company, the holder of the majority of the stock of Houston Company No. 1, should receive the entire issue upon certain conditions, unless some portion of it was taken by floating debt creditors or holders of the stock of the old company. The re-organization agreement further provided that in the event a certain portion of said stock was not taken up, the Southern Pacific Company, or its appointee, upon providing such portions of the cash payments for inter-

est and bonus to the holders of the first mortgage bonds and coupons, and for the necessary charges, etc., incurred as shall not have been provided for by the floating debt creditors, shall be entitled to the entire balance of stock of the new company not so taken, etc. If the stockholders availed themselves of the offer they were required to pay a sum sufficient to liquidate what the Central Trust Company should fix as their share of the expenses of the re-organization and the amount of the floating debt.

The Southern Pacific Company had to provide only for its share of expenses of the re-organization. The outside minority stockholder was required to do this and pay his share of floating debt in addition. The Central Trust Company fixed $73.00 a share as the assessment on stockholders for new stock, which was finally cut down to $71.40. The statement made that the terms imposed upon the minority stockholders were prohibitive is thus commented upon by the learned counsel for plaintiffs: "No stockholder paid the prohibitory assessment except one person who afterwards withdrew the payment. The Southern Pacific Company, while not by virtue of its control of a majority of the old stock, availing itself of the opportunity granted to stockholders, but rejecting the burdens of that opportunity, in its capacity as a direct party to the agreement, took the whole $10,000,000 of stock, free from the burdens imposed on stockholders."

Confronted by this situation and the decree of the United States Circuit Court for the Eastern District of Texas, what were the rights of the minority stockholders? The learned counsel for the plaintiffs claims that the Southern Pacific Company has acquired and now claims to hold for its own benefit, either directly or through the defendant Olcott, as its agent, the entire net property of Houston Company No. 1. It is conceded that the rights of the mortgagees of Houston Company No. 2 are not involved in this controversy. It is a contest between the Southern Pacific Company as a majority stockholder of the old company and the minority stockholders who are seeking to compel the due recognition of the legal rights

of Houston Company No. 1 under the re-organization agreement. The claim is made that the bondholding creditors agreed to give the Southern Pacific Company, the majority stockholder of the railway company, the entire consideration of an agreement which was to be performed by the old railway company; that the minority stockholders are entitled to their share of such benefits of this composition agreement as should have gone to Houston Company No. 1. The counsel for plaintiffs states: " On this property we seek in this suit to impress a trust to give effect to the rights of the minority stockholders. And we seek also an accounting with the Southern Pacific Company."

This brings us to the question whether the plaintiffs can enforce these alleged claims in the present action. It is true there are allegations in the complaint that there was a combination between the Southern Pacific Company, the Central Trust Company and the defendant Olcott and others to ruin and defraud the minority stockholders. No proof of fraud was given at the trial, and the allegations are of no legal importance.

The learned Special Term, in its grounds for a short decision, stated that this action " is in effect a suit to set aside or avoid a decree of foreclosure and sale duly made and entered by the United States Circuit Court for the Eastern District of Texas." The learned Appellate Division, referring to this statement of the Special Term, says: " There is no attack made in this action upon the decree of the United States Circuit Court or the sale under the decree. * * * It is quite clear that to this cause of action the decree of the United States Circuit Court, under which the property was sold, was not a bar." The Appellate Division then dealt with the claim of plaintiffs on the merits, and held that no trust could be impressed in their interest as contended.

The counsel for plaintiffs argues that the cause of action now sought to be enforced rests upon four facts, either admitted or proved by defendants: (1) The plaintiffs' ownership of the shares of stock of Houston Company No. 1 and his representation of other stockholders; (2) control by the Southern

Pacific Company of the majority of the stock of Houston Company No. 1; (3) the various legal proceedings in the Federal court in Texas terminated by the decree of foreclosure and the sale under that decree, and the reorganization under which the decree was reached; (4) the fact establishing the trust obligation resting upon the defendant, the Southern Pacific Company, and its representative, the defendant Olcott, · in favor of the minority stockholders of the railway company.

In drafting a bill in equity covering a complicated situation, many allegations are inserted that prove to be irrelevant and unnecessary on the trial, and oftentimes the prayer for judgment rests mainly upon the general request for such other or further relief as to the court may seem just and proper.

I am of opinion that on the uncontroverted facts in this record, set forth in the complaint and admitted by the answers, the learned Appellate Division erred in reaching the conclusion that, notwithstanding the decree of the United States Circuit Court for the Eastern District of Texas was not a bar to this action, there was no question of law presented for its consideration that entitled plaintiffs to judgment of reversal. This being the condition of the record, the unanimous decision of the Appellate Division has no bearing on the case.

It is unnecessary to state in detail the facts tending to show that the two reasons given by the Appellate Division for dismissing the complaint involve legal error. The plaintiffs' brief is very full in this connection. It is a conceded fact that the old company was practically insolvent unless measures were taken for its relief. It is also conceded that the rights of the defendants, the mortgagees of the new company, are not involved in this litigation. The question is whether the minority stockholders are entitled to work out through the Houston Company No. 1 their claim that by the terms of the re-organization agreement the Southern Pacific Company has been permitted to appropriate the whole consideration of an agreement to which the old company was a party and by which it was entitled to certain benefits. All the stockholders of the old company were vested with equal rights.

The re-organization agreement became necessary by reason of the following situation : That out of a mortgage indebtedness of over $19,000,000 only the income mortgage, securing $1,500,000, was due, the remaining mortgages being unforeclosable after default in payment of interest. The bonds secured by the $1,500,000 were held by the trustees of the general mortgage as additional security for $4,305,000 issued under it. The general mortgage was not then due. Under the agreement declaring all mortgages due, pending suits to foreclose, the various mortgages were consolidated and carried to judgment. The suit to foreclose the income mortgage, the only one due by its terms, was filed as a cross bill in the consolidated cause. The result was that $17,521,000, the amount of principal represented by unforeclosable mortgages, was declared due and foreclosed in the consolidated action. It is clear that the bondholders of the old company secured an immense advantage by reason of rendering immediately due millions of mortgage indebtedness having years to run before payment could be demanded.

It cannot be assumed, as was done by the Appellate Division, that a foreclosure of the only mortgage due, securing $1,500,000, would have resulted in a situation as favorable to bondholders as was realized when the total indebtedness could be treated as due. It is apparent that any claim the minority stockholders have in equity and by way of lien against the Southern Pacific Company can only be worked out through the old company and in an action where all the parties in interest are represented, as in this case.

The Appellate Division, referring to the Southern Pacific Company, said : " The Southern Pacific Company was a large creditor of the corporation and as such became a party to this reorganization scheme. The fact that this creditor was also a stockholder of the company and controlled a majority of the stock is no reason why it should not protect itself as a creditor of the insolvent corporation. And all of its acts so far as disclosed by this record were entirely justified by its relation as creditor of the corporation."

Counsel for plaintiffs very properly points out that there is no allegation or proof that the Southern Pacific Company was a creditor of the railway company, except as the Southern Development Company and Morgan's Company were creditors of the railway company and were controlled by the Southern Pacific Company. The record contains no issue as to the right of the Southern Pacific Company as a creditor. The re-organization agreement, referring to the Southern Pacific Company, party of the seventh part, states, " and the said Southern Pacific Company is interested in connecting roads in conjunction with which it desires such Houston and Texas Central Railway Company to be operated."

Counsel also states there is no proof that the Southern Pacific Company or the companies it controlled ever sued upon the floating debt or took judgment upon it or acquired or enforced any right under such debt. It is the plaintiffs' claim that the Southern Pacific Company has secured the $10,000,000 of the stock of the new company, being its entire stock, by reason of the fact that it owned and controlled a majority of the stock of the old company.

I am of opinion that the Southern Pacific Company in consenting as a majority stockholder to the scheme of the re-organization agreement did so as the representative of the old company and all of its stockholders, and the minority stockholders are entitled to their share of the benefits. What that share is can only be ascertained upon an accounting with the majority stockholder. The Southern Pacific Company upon such an accounting will be afforded the fullest opportunity to establish credit for any loss or expense to which it has been put in consequence of additional consideration moving from it in order to bring about the settlement with the creditors. Olcott and Downs bid in and hold title in their own names, the former to 4,340,339 acres, and the latter to 277,200 acres of land granted to the old company by the state of Texas. These parties purchased under the reorganization agreement and they are necessary parties to this action.

The present position of the plaintiffs is that the Southern

Pacific Company occupies the same position towards minority stockholders as did the officers and directors of the old company. This position of the Southern Pacific Company prevents it from taking any advantage of minority stockholders. Furthermore, the plaintiffs ratify and confirm the composition agreement with creditors. They admit that the judgment of the United States Circuit Court for the Eastern District of Texas is final and conclusive.

The present position of the plaintiffs is not inconsistent with the finding of the trial court that the purchasers at the foreclosure sale acquired a good title. The Southern Pacific Company, the majority stockholder of the old company, received the entire issue, $10,000,000 stock of the new company, and plaintiffs seek after a full accounting and adjustment of mutual rights between it and them to impress a trust on the net property of the old company for the benefit of minority stockholders.

The rule governing conflicting rights between majority and minority stockholders is discussed in *Farmers' Loan & Trust Company* v. *New York and Northern Ry. Co.* (150 N. Y. 410). A very interesting discussion of the general principles governing in such cases is found in *Ervin* v. *Oregon Ry. & Navigation Co.* (27 Fed. Rep. 625). (See, also, following cases: *Jackson* v. *Ludeling*, 21 Wall. 616; *Menier* v. *Hooper's Telegraph Works*, L. R. [9 Ch. App.] 350.)

The judgment appealed from should be reversed, with costs.

Cullen, Ch. J., Gray, Haight and Willard Bartlett, JJ., concur with Hiscock, J.; Vann, J., concurs with Edward T. Bartlett, J.

Judgment affirmed.