GERNSHEIM *et al.* *v.* OLCOTT *et al.*

*(Supreme Court, General Term, First Department. April 15, 1890.)*

CORPORATIONS—REORGANIZATION—INJUNCTION.

By an agreement for the reorganization of a corporation, entered into between the stockholders and creditors, it was provided that new stock should be issued in lieu of the old, which should be divided *pro rata* among the holders of the floating debt of the corporation, on certain conditions, and among the old stockholders who should elect to provide their *pro rata* share of the amount requisite to pay the floating debt and other charges, the amount of such *pro rata* share to be fixed and determined by a certain trust company. *Held*, that the old stockholders, on a simple allegation that the assessment made by the trust company was "unnecessarily high," could not have an injunction restraining the distribution of stock until the validity of the claims to be paid by the assessment could be investigated. Reversing 7 N. Y. Supp. 872.

Appeal from special term, New York county.

Action by Michael Gernsheim, Eugene A. Loeb, and Albert Loeb against Frederic P. Olcott, the Houston & Texas Central Railway Company, Collins P. Huntington, and others, to reduce an assessment levied on the stockholders, and to enjoin defendants from disposing of any stock of the new or reorganized Houston & Texas Central Railway Company. An agreement for the reorganization of said company was entered into between its creditors and the stockholders, by which a new corporation, under the same name, was to be created, and the Central Trust Company of New York city was to become the purchaser of nearly all the property of the old corporation at foreclosure sale, and new stock was to be issued in lieu of the old, to be divided among creditors and the old stockholders on certain conditions. The latter company was charged with the execution of all the important details of the agreement. Plaintiffs were stockholders in the old corporation. From an order continuing an injunction restraining the distribution of such stock defendants appeal.

Argued before VAN BRUNT, P. J., and BARTLETT and BARRETT, JJ.

*Butler, Stillman & Hubbard,* (*Almon Goodwin* and *Adrian H. Joline,* of counsel,) for appellants.　*Dittenhoefer & Gerber,* (*Frederic R. Coudert* and *Jefferson Chandler,* of counsel,) for respondents.

BARRETT, J.　The facts are fully stated in the opinion delivered at special term, (7 N. Y. Supp. 872,) and it will not be necessary to repeat them *in extenso.*　The plaintiffs commenced this action for the purpose of obtaining a judgment, adjudging that a decree of the circuit court of the United States for the eastern district of Texas was "fraudulent, collusive, illegal, and void."　The prayer for relief is in the alternative, and asks, in the event of the court refusing to decree invalidity, that the plaintiffs have a reasonable time to intervene in the Texas suit, or to apply there by original bill to set aside the decree, and the sale and all subsequent proceedings thereunder.　As an incident to both prayers, the plaintiffs ask an injunction restraining the defendants from issuing any shares of stock or bonds under a certain reorganization agreement, referred to in the pleadings.　The entire case made by the complaint, in support of this relief, was minutely and ably examined by the learned judge at special term, and every question presented was decided adversely to the plaintiffs, the injunction being dissolved in great part, and retained only as to the issuance of stock in the reorganized company.　In his reasoning and conclusions as to these questions we fully concur.

There is, however, a question which underlies the right to the maintenance of the injunction at all, as the case was made, and which evidently was not called to the attention of the learned judge, but has been raised on this appeal, and which causes us to think that the correct result of the views expressed would have led, if presented to him, to the entire dissolution of the injunction.　When the plaintiffs failed with regard to the Texas decree and the reorganization agreement, they failed as to the scope of the bill.　They could then obtain the relief granted by the order appealed from only upon an amended complaint, setting up fraud, mistake, or negligence on the part of the trust company; in other words, an abuse of the power of determination conferred upon it by the reorganization agreement.　And it would also have been necessary to support these averments by at least *prima facie* proof of the injustice or invalidity of the claims which were allowed, or of the failure of the company to make proper investigation before such allowance.　It will be observed that the case upon this head is substantially a new one.　It proceeds upon an affirmation of the reorganization agreement, and a willingness to accept the *pro rata* share of new stock, provided the assessment is fair and just.　The present allegations of the complaint might possibly remain and be treated as leading up to and coloring the oppressive assessment, but, standing alone, they clearly disaffirm the reorganization agreement, and all the proceedings which called it into existence.　Now, under this reorganization agreement, the function of determining the amount of the assessment is, as above suggested, conferred upon the trust company.　The provision on that head reads as follows: "*Ninth.* The said ten million dollars ($10,000,000) par value of said new stock is to be issued to, and shall be divided *pro rata* among, such holders of the floating debt of the said railway company as, within a time to be prescribed by said trust company, may provide a *pro rata* share, proportionate to the whole floating debt of the company, of the cash payments to be made hereunder for interest and bonus to the holders of the first mortgage bonds and coupons, and for the necessary charges, expenses, and liabilities incurred, or to be incurred, by the said trust company in carrying out the provisions of this agreement: provided, however, that the holders of the existing capital stock of the Houston and Texas Central Railway Company may, within a time to be prescribed by said trust company therefor, if they shall elect so to do, provide their *pro rata* share proportionate to the whole outstanding capital of the present company of the amount requisite to

discharge the floating debt of the company, and to provide for the cash payments, charges, expenses, and liabilities above referred to, and in that event they shall be entitled to receive a like proportionate amount of stock of said reorganized company. The amount of such *pro rata* share to be paid, whether by the holders of the floating indebtedness of said company or by said stockholders, is to be fixed and determined by the said trust company."

If, therefore, the case is to proceed upon the theory that the trust company has fixed a percentage of assessment in excess of what is necessary to discharge the floating debt, and to provide for the cash payments, charges, expenses, and liabilities referred to, there must, of course, be proper allegations and proofs. The only statement of fact upon that head which is to be found in the present complaint is this: "That said assessment was made unnecessarily high, and, as plaintiff verily believes and charges, in bad faith, by the said Huntington and his associates, to bar out the present stockholders, and to enable, under the said plan of reorganization, the Southern Pacific Company to acquire the entire stock on the payment simply of the amount required to be paid to the first mortgage bondholders for interest and bonus and the expenses of the reorganization." It is plain that such an allegation will not answer. The assessment was not "unnecessarily high" to meet the floating debt and other charges, as fixed and determined by the trust company. And there is neither allegation nor evidence questioning the good faith and vigilance of the trust company, or impugning the correctness of the determination which it made. It is said that the assessment is an extraordinary one. And so it is. But the trust company's answer to that suggestion is that it is not responsible for the amount of the floating debt or other charges, and that it is the latter which happen to be extraordinarily large. The error which we think the learned judge at special term here fell into consists in the assumption that the stockholders have a right to enjoin the completion of the reorganization scheme until they can investigate the claims upon which the assessment was fixed. In other words, that the plaintiffs, having failed in their attack upon the Texas decree and the reorganization agreement, may proceed as for an accounting with regard to the floating debt, and obtain a final judgment modifying the action of the trust company, and judicially fixing the assessment at whatever amount may, upon such accounting, seem requisite to the court. Clearly, there should at least have been a preliminary request for particulars from the trust company. It cannot be presumed that that company allowed any claim without adequate investigation. Nor can it be presumed that information with regard to its action would have been denied. Indeed, the president of the company in his affidavit filed upon the hearing of the motion testifies as follows: "The said Central Trust Company caused an examination to be made to ascertain the amount of the floating debt, and of the cash payments, charges, expenses, and liabilities incurred, or to be incurred, by it in carrying out the provisions of said agreement. Said examination was made in good faith, and the result thereof is contained and set forth in the exhibit annexed to the answer of said trust company, marked 'Exhibit A,' to which I respectfully refer. Thereupon the said trust company ascertained and determined the amount of the *pro rata* share of the stockholders of the old company of the amount required for the purposes specified in the reorganization agreement, and gave notice thereof, prescribing the time within such *pro rata* share should be provided." This was not denied, nor was the good faith of the examination impugned. Unless, therefore, these stockholders have a right to an independent judicial investigation, regardless of the agreement, and upon such investigation to substitute the judgment of the court for that of the trust company, we see no way of sustaining even this limited injunction. It certainly cannot be sustained without some allegations upon the subject more definite than the statement that "the assessment was made unnecessarily high." But, in our judgment, the

proposition that the stockholders may come into a court of equity, investigate there in a general way the justice and validity of each item composing the floating debt, liquidate by decree the sums which should be allowed and those which should be disallowed, and thereupon settle the proper percentage of assessment,—meanwhile tying up the entire reorganization,—cannot for a moment be entertained. The true view of the reorganization agreement is that all this is to be done by the trust company. That company cannot, of course, act arbitrarily or unreasonably, nor is there any evidence that it has done so. But, before the court can interfere, it must be made to appear by proper allegations and proofs that the claims (or some of them) which entered into the trust company's computation were unjust or excessive, or that for some adequate reason they should not have been included in its estimate. As the case now stands, there are no issues on this head to be tried, and, if the cause were to be heard at special term upon the present pleadings, the complaint, under the general views entertained by the learned judge, (in which, as already observed, we fully concur,) would have to be dismissed, unless, indeed, the court should thereupon proceed with a general inquiry into the nature and justice of the floating debt,—a function more analogous to that of an investigating committee than a tribunal organized to adjudicate *secundum allegata et probata.* The order appealed from should therefore be reversed, with $10 costs, and the usual disbursements, and the injunction dissolved, without prejudice, however, to a further application upon an amended complaint and proper proofs, if the plaintiffs are so advised. All concur.