### MacARDELL et al. v. OLCOTT et al.

(Supreme Court, Appellate Division, First Department. May 5, 1905.)

1. RAILROADS—MORTGAGES—FORECLOSURE—JUDGMENTS—BAR.

A judgment in an action in the federal courts to foreclose certain railroad mortgages for the benefit of bondholders, etc., under which the property mortgaged was sold, was no bar to a subsequent action by a stockholder, on behalf of himself and of other stockholders, to have the purchaser declared a trustee of the property for the benefit of such stockholders.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, §§ 1089–1094.]

2. SAME—TRUSTS—STOCKHOLDERS.

Where, in a consolidated action to foreclose certain railroad mortgages, one of them authorized a sale of the property on default in the payment of interest on bonds secured by that mortgage, and interest on the bonds so secured was in default, and it was proved that the railroad company was totally insolvent, a purchaser of its mortgaged assets under a foreclosure decree for the benefit of the bondholders could not be charged as a trustee of the property so purchased for the benefit of stockholders.

Appeal from Special Term, New York County.

Action by Cornelius MacArdell and others, as administrators and administratrix of Cornelius MacArdell, deceased, on behalf of themselves and other stockholders of the Houston & Texas Central Railway Company, against Frederick P. Olcott and others. From a judgment dismissing the complaint, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

H. Snowden Marshall, for appellants.
Adrian H. Joline, for respondents Olcott and Central Trust Co.
Gordon Knox Bell, for respondent the Farmers' Loan & Trust Co.

INGRAHAM, J. The record in this case is quite voluminous, and I will not attempt to do more than state the general nature of the action and the conclusion at which we have arrived.

There was a railroad in the state of Texas, organized and existing

under the laws of that state, known as the Houston & Texas Central Railroad Company, which is designated in the complaint as Company No. 1. This company prior to the year 1885 owned and operated a line of railroad in that state, having a capital of 77,269 shares of stock, at the par value of $100 each, of which the plaintiffs owned 900 shares. This railroad company had received from the state of Texas a grant of the public lands, and had between 1866 and 1881 issued several series of bonds, amounting to upwards of $18,000,000, secured by mortgages upon its railway and these lands; that prior to the year 1883 a corporation organized under the laws of the state of Louisiana, known as the Morgan's Louisiana & Texas Railroad & Steamship Company, was the owner of a majority of the stock of the Houston Company No. 1; that in 1883 the Southern Development Company, a corporation existing under the laws of the state of California, acquired a majority of the stock of the Morgan Company, and thereby obtained the control of the Houston Company No. 1; that the defendant Huntington was the president of and in control of a corporation known as the Southern Pacific Company, and also a large stockholder and in control of the Southern Development Company; that Huntington and his associates, by means of the control of the Morgan Company, elected the officers and directors of the Houston Company No. 1, and thereby obtained control of that company; that subsequently the stocks belonging to the Morgan Company, which included a majority of the stock of the Houston Company No. 1, were transferred to the Southern Pacific Company, and thus the Southern Pacific Company secured control of the Houston Company No. 1; that in January, 1885, when the coupons of the bonds of the Houston Company, due on that date, were presented for payment, they were purchased by and transferred to the Southern Development Company, and in 1885 the Southern Development Company obtained a judgment against the Houston Company No. 1 for upwards of $600,000, upon which judgment an order was made by the United States Circuit Court for the Eastern District of Texas appointing receivers to take possession of all the property, real and personal, of the Houston Company No. 1, and such receivers took possession of the property, and thereafter operated the road; that on January 21, 1886, the trustees named in the first mortgage upon the Houston Company No. 1 main lines filed a bill to foreclose the mortgage in the United States Circuit Court for the Eastern District of Texas, to which answers were interposed by the railroad company. Subsequently the Farmers' Loan & Trust Company, as trustee of a subsequent mortgage, also filed a bill in the same court to foreclose its mortgage, and on May 7, 1885, orders were entered extending the receivership appointed in the action brought by the Southern Development Company to these foreclosure actions. These actions were subsequently consolidated, but no further proceedings appear to have been taken in them until the year 1888. For several years prior to the year 1888 the operation of the Houston Company No. 1 had been unsuccessful. In no year had its earnings been sufficient to pay

its operating expenses, taxes, and interest on its mortgage bonds, so that, besides the mortgage indebtedness, there had accumulated a large unsecured indebtedness, amounting to about $3,000,000. The company was hopelessly insolvent, and was in the hands of receivers. In the mortgages, to foreclose which actions were pending, there was no provision authorizing a sale of the property upon a default in the payment of interest, but in a mortgage to secure what were called income and indemnity bonds there was the following provision:

"Seventh. That in case the said company shall at any time make default in the payment of the interest or principal falling due on any of the bonds or coupons issued under this indenture, after due presentment of the same at the place for payment thereof, and shall continue in such default for a period of sixty days, it shall thereupon be the duty of said parties of the second part herein, and of either of them, their rights, power and authority herein being joint and several, on the application of the holder or holders of such bonds or coupons so in default, or any of them, to proceed to enforce this indenture for the security of said bonds, and to that end to make sale, at public auction to the highest bidder for cash, before the courthouse door in the City of Houston, Texas, of all and singular, the said premises herein conveyed and assigned, without any exception or reservation whatsoever, after advertising the time, place and terms of such sale, for at least sixty days in a newspaper published in the City of New York, in one published in the City of Houston and in one published in the City of Galveston, to be published at least once a week in each of said newspapers during said sixty days, said premises as herein conveyed to be sold in mass, in bulk and not in parcels or any part thereof separately, such sale to be made, however, subject to the said prior mortgages hereinbefore referred to, and to the legal rights under said mortgages."

No action, however, had then been commenced to foreclose this mortgage, and the bonds issued under it had apparently been acquired by the trustees of a subsequent mortgage, and were held by the trustees as security for the bonds issued under that subsequent mortgage. This being the situation, an agreement for the reorganization of the Houston Company No. 1 was submitted to the bondholders by the Central Trust Company, of which the defendant Olcott was president, and who became a trustee for the bondholders under that agreement. Thereafter a large percentage of the bonds secured by the various mortgages of the Houston Company No. 1 was deposited with the trustee. This agreement for the reorganization of the road contemplated a foreclosure of the various mortgages, the purchase of the mortgaged premises at a sale under a decree of foreclosure by the purchasing trustee, the Central Trust Company, the organization of a new company, to which the property was to be transferred, and the issue by the new company of bonds in place of the bonds secured by the various mortgages which had been given by the Houston Company No. 1; and the reorganization agreement provided that the capital stock of the new company was to be of the par value of $10,000,000, and that the holders of the stock of the Houston Company No. 1 were to have the right to a proportionate amount of that stock by contributing a proportionate amount of the floating debt of the old company and the expenses of foreclosure and reorganization. In the event that the stockholders refused to provide their pro rata

93 N.Y.S.—51

share, the said stock was to be transferred to the Southern Pacific Company, or its appointee, upon that company providing the amount necessary for the cash payments to be made for interest and bonds to the bondholders of the first mortgage bonds and coupons, and for the necessary charges, liabilities, and expenses incurred by the trust company in carrying out the provisions of this agreement; the Southern Pacific Company to guaranty the payment of principal and interest on the bonds to be issued by the Houston Company No. 2. This agreement having been assented to by a majority of all the bonds issued, proceedings were taken to obtain a decree of foreclosure, under which the property of the railroad and the lands covered by the various mortgages could be sold. A cross-bill was filed by the trustees in the mortgage issued to secure the income and indemnity bonds in the consolidated action to which these trustees were parties. Proof was taken in the consolidated action necessary to obtain a decree of foreclosure. The case was then brought on for hearing before the United States Circuit Court for the Eastern District of Texas, which resulted in a decree entered on May 4, 1888, directing a sale of the railroad and the lands and other property secured by the several mortgages, and under that decree all of said property was sold; the defendant Olcott being the purchaser of the property covered by the mortgages, except the branch road known as the Waco & Northwestern Division, and the land grants secured by the building of that division, and this division and lands were purchased by the defendant Downs. That sale was subsequently confirmed by the court, and a conveyance executed under the decree vesting the defendants Olcott and Downs with all of the property of the Houston Company No. 1. The Waco & Northwestern Division seems to have been conveyed subject to a prior mortgage which was foreclosed; but the main line and the lands purchased by Olcott were sold free and clear of all incumbrances, and Olcott thus acquired a title to that railroad and the lands conveyed to him. Olcott, thus having acquired title to the railroad and the lands, proceeded to carry out the provisions of the reorganization agreement. A new company, called the Houston Company No. 2, was organized, and to that corporation Olcott transferred the road that he had acquired at this purchase under the decree of the United States Circuit Court; retaining the legal title to the lands which he had acquired at the sale under the decree of foreclosure. He subsequently executed and delivered indentures of trust by which these lands were to be held for the benefit of the holders of bonds of Company No. 2, issued in lieu of the bonds of Company No. 1; the proceeds of these lands, when sold, to be applied to the redemption of those bonds.

There is no attack made in this action upon the decree of the United States Circuit Court, or the sale under that decree. The ground upon which the plaintiffs ask for judgment is that, although the title to all of the property purchased at the sale under that decree vested in the defendant Olcott, that property was held by him charged with a trust in favor of the stockholders of the Houston

Company No. 1, and it is to enforce this trust that the action is brought. This claim is based upon the allegation that, these various mortgages of Houston Company No. 1 containing no provision by which the principal of the bonds should become due on a default in payment of the interest, no decree of foreclosure could have been obtained, except by consent of the Houston Company No. 1, and that this consent was given by the Southern Pacific Company, the owners of a majority of the stock of the Houston Company No. 1, in fraud of the rights of the minority stockholders; that the decree that was entered was in effect a consent decree, to which the bondholders were not entitled; and that, as Olcott purchased all of the property with notice of the rights of the minority of the stockholders of the Houston Company No. 1, the principal in his hands is in some way subject to a lien in favor of the stockholders of the Company No. 1, and that right the plaintiff, as a stockholder on behalf of himself and all others similarly situated, seeks to enforce.

It is quite clear that to this cause of action the decree of the United States Circuit Court, under which the property was sold, was not a bar. The court recognizes the full force and effect of that decree, and that by it Olcott acquired a good title to all the property purchased; but what is claimed is that he acquired that title charged with a trust in favor of the stockholders of the Company No. 1, upon the principle that when a trustee purchases property of his cestui que trust the benefit of the purchase inures to the beneficiary, and the legal title, while held by the trustee, is subject to the right of the beneficiary to compel the trustee to account for it or its value. Courts of equity have always prevented a trustee from obtaining a benefit by dealing in the property of a beneficiary, and charged property that has been purchased by a trustee with a trust in favor of the beneficiary, no matter in what form, or under what circumstances the trustee acquired title to the trust property. In this case the plaintiff's claim is based upon allegations that a majority of the stockholders occupying a relation of trust and confidence towards the minority stockholders consented to this decree, by which the corporation of which the plaintiff was a stockholder was divested of its property, and the defendant Olcott has acquired a substantial interest in that property by virtue of this consent, without paying any consideration therefor. It appears that, under one of these mortgages of the Houston Company No. 1, there existed a right in the mortgagee to sell the property upon default in the payment of interest upon the bonds secured by that mortgage. Assuming that this decree could not have been obtained in the action to foreclose the first and general mortgages, when the trustees in the mortgage which contained the power of sale on default in the payment of interest filed their cross-bill to foreclose, and the company was proved and conceded to be totally insolvent, the trustees of that mortgage had a right to have a decree directing a sale of the mortgaged premises; and it is quite apparent that no defense that the company could have interposed to this cross-bill could have been successful, and,

upon the admission in the pleadings and the undisputed facts, the bondholders were entitled to have the property sold. It is clear that this decree was obtained without the consent of the Houston Company No. 1. It apparently was a decree by default, but it does not appear that the Houston Company had any defense. This being the case, the sale was ordered, and the property was purchased by Olcott and Downs. Now, upon no principle can Olcott and Downs be held to be trustees for the Company No. 1 or its stockholders. They represented the creditors of the corporation, and the fact that the Southern Pacific Company was a party to the reorganization agreement does not make Olcott, representing the creditors, a trustee for the Houston Company No. 1 or its stockholders. The Southern Pacific Company was a large creditor of the corporation, and, as such, became a party to this reorganization scheme. The fact that this creditor was also a stockholder of the company, and controlled a majority of the stock, is no reason why it should not protect itself as a creditor of the insolvent corporation; and all of its acts, so far as is disclosed by this record, were entirely justified by its relation as creditor of the corporation. Assuming that Olcott was charged with the knowledge of the fact that the Southern Pacific Company was the owner of a majority of the stock of the corporation, and controlled it, there was nothing in the situation that could possibly place Olcott in a position of trustee for the insolvent corporation or its stockholders, or for the Southern Pacific Company as the majority stockholder. This action is not to impress a lien upon the stock of the Houston Company which was subsequently acquired by the Southern Pacific Company, but to impress upon the property that was covered by these various mortgages of Company No. 1, owned by a purchaser who had purchased it as representing the creditors. Whatever right Olcott had to retain these lands as against the bondholders for whom he acted in purchasing the property at the sale under the foreclosure decree—a right which he has never claimed—when that sale was confirmed, and the property by the conveyance under the decree vested in him, it certainly divested the Houston Company No. 1 of all title to the property; and Olcott acquired, as against the Houston Company No. 1 and its stockholders, absolute title thereto, discharged of all claims or demands of every kind and description in favor of that corporation or its stockholders. Whether that decree was regular is not in question. The court had jurisdiction of the subject-matter. All parties interested were before it. The title acquired under its judgment was good as against all the parties to the action in which the judgment was entered, and as the purchaser under that decree stood in no trust relation to the Houston Company No. 1 or its stockholders, and was under no obligation to act for or protect it or them, his title to the property cannot be impeached by any party to that action who was bound by the decree entered in it.

I have thus indicated the views that I take upon the legal questions presented upon this appeal, and, if I am correct, it follows

that the plaintiff had no cause of action, and for that reason the judgment should be affirmed, with costs.   All concur;  VAN BRUNT, P. J., and HATCH, J., in result.