# SOUTHERN PACIFIC COMPANY *v.* BOGERT ET AL., EXECUTORS OF LAWRENCE, ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 305. Argued April 17, 21, 1919.—Decided June 9, 1919.

To constitute laches it is essential that there be acquiescence in the alleged wrong or lack of diligence in seeking a remedy, in addition to lapse of time. P. 488.

So *held* where there was a delay of over 22 years upon the part of minority shareholders in seeking to affix a trust on shares in a new corporation held by the majority, but in the interval the plaintiffs, or others representing the minority as a class, had been diligent in attacking the foreclosure and reorganization proceedings through which such shares were acquired.

When the cause of action is such that suit may be brought on behalf of the plaintiff and all persons similarly situated, it is not essential that each such person should intervene in order to avoid the charge of having slept on his rights. P. 489.

Long failure to discover the appropriate remedy, though well known, does not establish laches if there has been due diligence and the delay has not prejudiced the defendant. P. 490.

Judgments against minority shareholders in suits to set aside a foreclosure and a reorganization agreement as fraudulent, and to compel a reduction of the assessment under the agreement and enjoin distribution of stock according to its terms, *held*, not to estop them, by way either of *res judicata* or of election, from maintaining a further suit to declare the majority shareholder their trustee of new shares taken by it under the reorganization. *Id.*

The fact that the majority shareholder, as part of an unfair scheme of reorganization brought about through its control, guarantees the bonds of a new company, successor to the corporate property, and agrees to take the shares of the new company not taken by the minority, does not give it the status of a banker or underwriter, in relation to the minority shareholders, and thus relieve it of its fiduciary duty to them in respect of the new shares so acquired, when its design was to secure the property for its own purposes and nothing has been paid under the guaranty. P. 491.

The doctrine under which majority shareholders exercising control are deemed trustees for the minority applies where the control is exercised by a corporation through a subsidiary over a third corporation of which the subsidiary is the majority shareholder. *Id.*

The duty of the majority shareholder to make *pro rata* distribution of the fruits of its control on equal terms among the minority is fiduciary; and not dependent on fraud or mismanagement. P. 492.

In a suit by the minority to hold the majority shareholder as trustee of shares in a new company acquired by the defendant through

a reorganization, the old company is not a necessary party. P. 492.

In such a suit, the fact that the floating debts of the old company were not provided for in the reorganization does not bar relief to the minority, they not having been at fault. *Id.*

Where the majority shareholder of a corporation, through a reorganization obtained all the shares of a new corporation, successor to the old, and, after years, during which the minority attacked only the reorganization proceedings, pledged them with other securities as collateral, *held*, that the minority's later claim to such shares *in specie* should be so enforced as not to create undue pecuniary burdens on the majority in maintaining the collateral values under the loan agreement, and, to this end, that depreciation of the other collateral since the entry of the present decree should be taken into consideration, upon remand of the case for other reasons. P. 493.

In such a suit, the majority shareholder should be allowed appropriate compensation for its contributions toward satisfaction of the floating debts of the old company, in so far as the new shares to be received by the minority shareholders of that company are thereby increased in value. P. 494.

*Held,* that the claim of such compensation was not too late in this case, it having been made before final decree and it not appearing that the delay in asserting it was prejudicial to plaintiffs. P. 496.

Such contributions may consist in payments by the majority shareholder directly, or in effect by it through its subsidiary corporation. P. 495.

In determining the amounts of such contributions and the extent to which they benefited such minority shareholders, judgments on floating debts against the old company *held* not to bar consideration of other relevant facts. *Id.*

In a class suit by minority shareholders, others in like case may be allowed to intervene in the District Court after interlocutory decree. *Id.*

In a suit of that character, application of minority shareholders to intervene in this court *denied*, without prejudice to their right to apply to the District Court, the case being remanded. P. 498.

Decree modified. For the opinion below see 244 Fed. Rep. 61.

THE case is stated in the opinion.

*Mr. Lewis H. Freedman* and *Mr. Gordon M. Buck*, with whom *Mr. Arthur H. Van Brunt* was on the briefs, for petitioner.

*Mr. Charles E. Hughes*, with whom *Mr. H. Snowden Marshall*, *Mr. David Gerber* and *Mr. Dudley F. Phelps* were on the brief, for respondents.

· *Henry J. Chase, Fergus Reid, Albert M. Polack, Francis P. O'Reilly* and *The Corn Exchange Bank* filed petitions for leave to intervene, etc.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

In 1888, and for some years prior thereto, the Southern Pacific Company dominated the Houston & Texas Central *Railway* Company, electing directors and officers through one of its subsidiaries, which owned a majority of the Houston Company stock. In 1888, pursuant to a reorganization agreement, mortgages upon the Houston Company properties were foreclosed and these were acquired by the Houston & Texas Central *Railroad* Company; the old company's outstanding bonds were exchanged for bonds of the new; all the new company's stock was delivered to the Southern Pacific; its lines of railroad were incorporated in the transcontinental system of that corporation; and the minority stockholders of the old Houston Company received nothing. In 1913, the appellees, suing on behalf of themselves and other minority stockholders, brought this suit in the Supreme Court of New York to have the Southern Pacific declared trustee for them of stock in the new Houston Company and for an accounting. The plaintiffs below being citizens and residents of New York, and the Southern Pacific, a Kentucky corporation, it removed the case to the District Court of the United States for the

Eastern District of New York; and that court, after a hearing on the evidence, entered a decree for the plaintiffs. (226 Fed. Rep. 500. See also 215 Fed. Rep. 218, and 211 Fed. Rep. 776.) There had been issued by the old Houston Company 77,269 shares of stock, and by the new 100,000 shares. The decree declared that the Southern Pacific held for plaintiffs and other stockholders who intervened 24,347 9-10 shares in the new Houston Company, directed that it should deliver to them these shares and also in cash the sum of $702,336.61 (being the aggregate of all dividends paid thereon) and interest thereon from the times the several dividends were received, upon receiving from them 18,816 shares in the old Houston Company and also with each share of old stock delivered $26 [1] in cash and interest thereon from February 10, 1891. This decree was affirmed by the Circuit Court of Appeals (244 Fed. Rep. 61); and the case comes here on certiorari (245 U. S. 668).

In considering the many objections urged against the decree, it is important to bear constantly in mind the exact nature of the equity invoked by the bill and recognized by the lower courts. The minority stockholders do not complain of a wrong done the corporation or of any wrong done by it to them. They complain of the wrong done them directly by the Southern Pacific and by it alone. The wrong consists in its failure to share with them, the minority, the proceeds of the common property of which it, through majority stockholdings, had rightfully taken control. In other words, the minority assert the right to a pro rata share of the common property; and equity enforces the right by declaring the trust on which the Southern Pacific holds it and ordering distribution or compensation. The rule of corporation law and of equity invoked is well settled and has been often applied. The majority has the right to control; but when it does so, it

---

[1] The exact figure is $26.026.

occupies a fiduciary relation toward the minority, as much so as the corporation itself or its officers and directors.. If through that control a sale of the corporate property is made and the property acquired by the majority, the minority may not be excluded from a fair participation in the fruits of the sale.[1]

The facts on which the decree is based are carefully set forth in the bill of complaint; and the decree declares in terms that every allegation contained in it is. true. No adequate reason is shown for challenging, in any respect material for the purposes of this opinion, the correctness of this concurrent finding of the two lower courts; and it is accepted as correct. *Baker* v. *Schofield,* 243 U. S. 114, 118. The detailed facts and the evidence upon which they rest are fully recited in the opinions delivered below or in the earlier litigation hereafter referred to; and the facts will be recited here only so far as necessary to an understanding of the several errors of law now insisted upon.

*First.* The Southern Pacific contends that plaintiffs are barred by laches. The reorganization agreement is dated December 20, 1887; the decree of foreclosure and sale was entered May 4, 1888; the sale was held September 8, 1888; and the stock in the new company was delivered to the Southern Pacific on February 10, 1891. This suit was not begun until July 26, 1913; and not until that time was there a proper attempt to assert the specific equity here enforced; namely, that the Southern Pacific received the stock in the new Houston Company as trustee for the stockholders of the old. More than twenty-two years had thus elapsed since the wrong complained of was committed. But the essence of laches is not merely lapse of time. It is essential that there be also acquiescence in the

---

[1] *Menier* v. *Hooper's Telegraph Works,* L. R. 9 Ch. App. 350, 354; *Ervin* v. *Oregon Ry. & Nav. Co.,* 20 Fed. Rep. 577; 27 Fed. Rep. 625; *Farmers' Loan & Trust Co.* v. *New York & Northern Ry. Co.,* 150 N. Y. 410; *Sparrow* v. *E. Bement & Sons,* 142 Michigan, 441.

alleged wrong or lack of diligence in seeking a remedy.
Here plaintiffs, or others representing them, protested as
soon as the terms of the reorganization agreement were
announced; and ever since, they have with rare pertinacity
and undaunted by failure persisted in the diligent pur-
suit of a remedy as the schedule of the earlier litigation
referred to in the margin demonstrates.[1]   Where the
cause of action is of such a nature that a suit to enforce it
would be brought on behalf not only of the plaintiff but of

---

[1] The earlier litigation is summarized thus in the opinion of the Dis-
trict Court: "*Carey* v. *H. & T. C. Ry. Co.*, 45 Fed. Rep. 438 (1891);
*Id.* (C. C.) 52 Fed. Rep. 671 (1892); stockholders held not entitled to
decree enjoining carrying out of plan of reorganization, or to have
foreclosure set aside as fraudulent. *Carey* v. *H. & T. C. Ry. Co.*, 150
U. S. 170 (1893); appeal to Supreme Court from decree of Circuit Court
dismissed. *Carey* v. *H. & T. C. Ry. Co.*, 9 C. C. A. 687, 13 U. S. App.
729 (1894); decree of Circuit Court affirmed by Circuit Court of Ap-
peals for the Fifth Circuit. *Carey* v. *H. & T. C. Ry. Co.*, 161 U. S. 115
(1896); appeal to Supreme Court from decree of Circuit Court of Ap-
peals dismissed. *Gernsheim* v. *Olcott*, 7 N. Y. Supp. 872 (1889); 10
N. Y. Supp. 438 (1890); *Gernsheim* v. *Central Trust Co.*, 61 Hun, 625;
16 N. Y. Supp. 127 (1891); stockholders held not entitled to reduction
of assessment or to injunction against distribution of stock of new
company under reorganization. *MacArdell* v. *Olcott*, 104 App. Div.
263 (1905); *Id.* 189 N. Y. 368 (1907); action by stockholders to set
aside foreclosure sale and annul reorganization agreement on ground
of fraud dismissed. *MacArdell* v. *Olcott*, 62 App. Div. 127 (1901);
application of stockholder for leave to intervene denied for laches.
*Lawrence* v. *Southern Pacific Co.* (C. C.), 165 Fed. Rep. 241 (1908);
*Id.* (C. C.) 177 Fed. Rep. 547 (1910); *Id.* (C. C.) 180 Fed. Rep. 822
(1910); action by stockholder for accounting and other relief; motions
to remand denied and suit dismissed. *Bogart* v. *Southern Pacific Co.*,
228 U. S. 137 (1913); appeal to Supreme Court from decree of Circuit
Court in *Lawrence* v. *Southern Pacific Co.*, *supra*, dismissed. *MacArdell*
v. *Olcott*, (N. Y. Court of Appeals, October 29, 1907) 189 N. Y. 369,
affirming 104 App. Div. 263, with statement of limitations in the com-
plaint. In the last-named case, the court (two judges dissenting) did
not attempt to consider the merits of this transaction, but expressly
stated that the present form of action was not presented by that com-
plaint."

all persons similarly situated, it is not essential that each such person should intervene in the suit brought in order that he be deemed thereafter free from the laches which bars those who sleep on their rights. *Cox* v. *Stokes*, 156 N. Y. 491, 511. Nor does failure, long continued, to discover the appropriate remedy, though well known, establish laches where there has been due diligence and, as the lower courts have here found, the defendant was not prejudiced by the delay.

*Second.* The Southern Pacific contends that adverse decisions in the earlier litigation are a bar either as an estoppel or by way of election of remedies; since the prosecution of some, if not all, of the earlier suits also was actively supported by the minority stockholders' committee, and the plaintiffs are bound as privies to the full extent to which the decrees therein constitute *res judicata.* But in none of these suits was the question here in issue decided. Except in so far as those cases were disposed of on objections to jurisdiction, they decided merely that the foreclosure could not be set aside as fraudulent; that the minority stockholders could not have the reorganization agreement declared fraudulent; and that they could not compel a reduction of the assessment made under it or enjoin distribution of the stock according to its terms. The minority stockholders sought, when presenting the case in the Court of Appeals of New York (*MacArdell* v. *Olcott*, 189 N. Y. 368, 372–373), to have declared the trust which was later decreed in this suit; but that court refused to consider the contention, for the reason that this claim to relief was based upon a theory "widely at variance" with that upon which that action was commenced and tried. Because of such wide divergence the earlier decrees do not operate as *res judicata.* And there is no basis for the claim of estoppel by election; nor any reason why the minority, who failed in the attempt to recover on one theory because unsupported by the facts, should

not be permitted to recover on another for which the facts afford ample basis. *William W. Bierce, Ltd.,* v. *Hutchins,* 205 U. S. 340, 347; *Barnsdall* v. *Waltemeyer,* 142 Fed. Rep. 415, 420; *Standard Oil Co.* v. *Hawkins,* 74 Fed. Rep. 395; *Henry* v. *Herrington,* 193 N. Y. 218.

*Third.* The Southern Pacific challenges the claim for relief on the ground that it took the new Houston Company stock, not as majority stockholder, but as underwriter or banker under the reorganization agreement. The essential facts are these: While dominating the old company through control of a majority of its stock, the Southern Pacific entered into its reorganization, under an agreement by which the minority stockholders of the old company could obtain stock in the new only upon payment in cash of a prohibitive assessment of $71.40 per share (said to be required to satisfy the floating debt and reorganization expenses and charges), while the Southern Pacific was enabled to acquire all the stock in the new company upon paying an assessment of $26 per share (said to be the amount required to satisfy reorganization expenses and charges). The Southern Pacific asserts that unlike the minority stockholders it assumed an underwriter's obligation to take the new company's stock not subscribed for by the minority and also guaranteed part of the principal and all the interest on the new company's bonds, which were given in exchange for those of the old company. But the purpose of the Southern Pacific in assuming these obligations was in no sense to perform the function of banker. It was to secure the incorporation of the Houston Railroad into its own transcontinental system. And it was never called upon to pay anything under its guaranty.

*Fourth.* The Southern Pacific contends that the doctrine under which majority stockholders exercising control are deemed trustees for the minority should not be applied here, because it did not itself own directly any

stock in the old Houston Company, its control being exerted through a subsidiary, Morgan's Louisiana & Texas Railroad & Steamship Company, which was the majority stockholder in the old Houston Company. But the doctrine by which the holders of a majority of the stock of a corporation who dominate its affairs are held to act as trustees for the minority, does not rest upon such technical distinctions. It is the fact of control of the common property held and exercised, not the particular means by which or manner in which the control is exercised, that creates the fiduciary obligation.

*Fifth.* Equally unfounded is the contention that the Southern Pacific cannot be held liable because it was not guilty of fraud or mismanagement. The essential of the liability to account sought to be enforced in this suit lies not in fraud or mismanagement, but in the fact that, having become a fiduciary through taking control of the old Houston Company, the Southern Pacific has secured fruits which it has not shared with the minority. The wrong ay not in acquiring the stock, but in refusing to make a pro rata distribution on equal terms among the old Houston Company shareholders.

*Sixth.* The Southern Pacific also urges that the suit must fail because the old Houston Company is an indispensable party and has not been joined. The contention proceeds upon a misconception of the nature of the suit. Since its purpose is merely to hold the Southern Pacific as trustee for the plaintiffs individually of the property which it has received, the old Houston Company is in no way interested and would not be even a proper party.

*Seventh.* The Southern Pacific also contends that the decree is erroneous because the effect is to give to the minority their pro rata share in the new Houston Company without their having made any contribution towards satsfying the floating indebtedness of the old; whereas, the loating debt creditors had a claim against the property

prior in interest to that of the old company's stockholders. *Kansas City Southern Ry. Co.* v. *Guardian Trust Co.,* 240 U. S. 166; *Northern Pacific Ry. Co.* v. *Boyd,* 228 U. S. 482. The fact that no provision was made for the floating indebtedness is not a bar to the minority obtaining relief. They did not come into court with unclean hands because there were floating debt creditors unpaid. If any floating debt creditors have been illegally deprived of rights, it was not by the minority's acts. Whether the terms on which relief should be granted the minority should be affected by the fact that the Southern Pacific had, through a subsidiary, a large interest in the unpaid floating debt, presents a more serious question, which will be considered later.

*Eighth.* Objection is made by the Southern Pacific to the terms of the decree also on the ground that, in requiring distribution of stock in the old Houston Company to the minority stockholders instead of providing merely for an accounting and compensation in damages, the decree imposes upon it a heavy and unnecessary hardship. This it is said will result from the fact that all the stock of the new Houston Company (except seventeen shares to qualify directors) has been pledged by the Southern Pacific as part collateral for an issue of thirty-five year 4 per cent. bonds to the amount of 250,000,000 francs; and that by reason of a clause in the collateral agreement, by which the Southern Pacific covenants that it is the lawful owner of the securities and that they "are not subject to any prior pledge, charge or equity," a decree requiring distribution of stock to the minority stockholders may conceivably entitle the trustee for these bonds to declare them due; that such default might preclude it from withdrawal of the stock and from substituting other collateral; and that, in any event, if substitution of collateral is permissible, additional securities will have to be deposited, because the agreement provides that in case of withdrawal of any

securities upon request made after September, 1911, those "offered in substitution and those remaining on deposit (in each instance), shall be equal in value, as appraised or reappraised, at the time of such proposed substitution to one hundred and twenty per centum (120%) of the amount of bonds then outstanding hereunder"; and that there had been a heavy depreciation in such other securities since the time of their deposit. The alleged hardship involved in requiring a delivery to plaintiffs of new Houston Company stock *in specie* was made by the interlocutory decree a subject of investigation by the special master; and his report that the requirement would not impose undue hardship appears to have been carefully considered before entry of the final decree; but neither of the lower courts set forth the reasons which led to the rejection of the Southern Pacific's contention. The final decree was entered in the District Court on October 5, 1916. Since then, the World War and the participation in it of the United States have greatly affected financial conditions and security values, especially those involving transportation properties. It may be that the clause in the collateral agreement requiring reappraisal of all securities upon the withdrawal of any might now prove very burdensome. The pledge was made in 1911; and, as the Southern Pacific contends, it was justified then in depositing this stock as collateral, because up to that time the minority stockholders had not made any claim to stock *in specie*. For reasons hereinafter stated the case must be remanded to the District Court for further proceedings with a view to modifying the terms of the decree in other respects. It seems to us proper that the Southern Pacific should also have liberty to present to that court reasons, if any, for believing that the decree as framed will under then existing conditions impose undue hardship upon it.

*Ninth.* The Southern Pacific objects to the terms of the decree also on the ground that if the minority stockholders

are held entitled to a *pro rata* share of the new company stock, it should be upon payment not merely of the $26 per share required to meet reorganization expenses and charges, but also of the additional sum required to discharge the floating indebtedness. At the time of the reorganization there was outstanding a large floating indebtedness for which on May 17, 1889, judgments were recovered; by the Lackawanna Iron & Coal Company, in the sum of $555,914.25; by Morgan's Louisiana & Texas Railroad & Steamship Company in the sum of $1,795,570.81; and by the Southern Development Company in the sum of $858,133.15. The last two companies held as collateral for their claims $880,000 of bonds of the old Houston Company, for which they later received in exchange, bonds of a new company to be applied at their par value toward payment of the debts for which judgment had been recovered. The reorganization agreement provided in substance that the whole $10,000,000 of stock of the new company, if not taken by the old company's stockholders, should be divided pro rata among such of the floating debt creditors as should provide the cash required to pay the floating indebtedness and reorganization expenses and charges but no floating debt creditor took advantage of this provision; and all were thus wiped out in the reorganization.

The Southern Pacific asserts that the Morgan Company was and still is its subsidiary; that it owned and now owns a large part of the stock of that corporation; and that through such stock ownership it is, in effect, a large floating debt creditor of the old Houston Company. It suggests also that it has paid out monies to protect the property of the new company from other floating indebtedness. If the Southern Pacific had been allowed to retain all the stock in the new Houston Company, it would obviously lose nothing by the wiping out of its interest in the floating indebtedness of the old company; and any

money expended by it in protecting the property of the
new company would be fully reflected in the increased
value of the stock therein, if it owned all. But if part
of the new company stock is taken from it and distributed
among the minority stockholders, the Southern Pacific
will lose and the minority stockholders will gain the pro
rata increase in value of the new company stock, due to
wiping out of the Southern Pacific's share in the floating
debt and to its expenditures made for wiping out other
indebtedness.

The Circuit Court of Appeals recognized that there was
great force in this contention of the Southern Pacific,
but overruled it because it "was never raised in the case
by pleading or otherwise until an exception was taken
to the report of the special master" and because "there
is nothing in the record to show what, if anything, the
Southern Pacific Company did give up." The memoran-
dum filed by the district judge on settlement of the inter-
locutory decree indicates that some such contention was
made then. At all events it was clearly made before
entry of the final decree; and it does not appear that the
minority stockholders were in any way prejudiced by
the failure to make the exact contention earlier. There
is no reason to believe that the parties cannot determine
now, as easily as they might have done a few years ago,
to what extent the floating indebtedness due the Morgan
Company represents money in effect expended by the
Southern Pacific for the benefit of the old Houston Com-
pany and to what extent the wiping out of any indebted-
ness and any expenditure made by the Southern Pacific
in connection therewith will enure to the benefit of such
of the minority stockholders of the old company as receive
stock in the new. Some adjustment should obviously
be made so as to compensate the Southern Pacific for
any contribution made at its expense to the value of the
stock in the new company of which the minority stock-

holders may get the benefit. The purpose of this proceeding is not to punish the Southern Pacific but to declare and enforce its obligation as trustee. The minority stockholders who seek equity should do equity; and a court of chancery has power in granting relief to prevent unjust enrichment of the minority stockholders at the expense of the Southern Pacific. To determine the amount of such contribution by the Southern Pacific and of such benefit to the minority stockholders further investigation by the trial court will be necessary; and the judgments on the floating indebtedness entered in 1889 against the old company should not be held a bar to any enquiry into relevant facts. Whether this compensation shall be made by way of addition to the assessment of $26 per share provided for in the decree; or whether it can and should be made by requiring the minority stockholders to consent to the creation, in favor of the Southern Pacific, of some charge against or interest in the new company which would have priority over the 100,000 shares of stock outstanding, as for instance an income bond or preferred stock; or whether the compensation should be made in some other manner, should, also, be determined in the first instance by the District Court where all the relevant facts can be ascertained. The final decree must be set aside and the interlocutory decree be modified so as to provide for the necessary enquiry; and when all the relevant facts shall have been ascertained, a final decree should be entered which will embody such terms as shall be found to be appropriate to afford to the Southern Pacific appropriate compensation for its contribution.

*Tenth.* The Southern Pacific objects to the orders permitting Gernsheim and the estate of Minzesheimer to intervene after the entry of the interlocutory decree, and objects also, to the final decree, in so far as it declares these interveners entitled to the relief granted other

minority stockholders. The suit was brought on behalf of all stockholders of the old Houston Company, situated similarly to the plaintiffs. The court found on competent evidence that these parties were such. If they could not have intervened as of right, it was at least within the discretion of the court to permit them to do so; and no reason is shown for questioning the exercise of its discretion. It is also urged that the earlier litigation by Gernsheim bars his claim to relief on the grounds of estoppel or of inconsistency of remedy; but that contention has already been shown to be unfounded.

*Eleventh.* The certiorari and return were filed May 3, 1918. On October 8, 1918, separate petitions were filed in this court by Henry J. Chase, by Fergus Reid, by Albert M. Polack, by Francis P. O'Reilly, and by The Corn Exchange Bank, alleging that they were respectively owners of stock in the old Houston Company and praying leave to intervene and that they be permitted to share in the benefits of the decree or, in the alternative, that they be permitted to make such application to the District Court. Action on these petitions was postponed to the hearing of the case on the merits. As the case must be remanded to the District Court for further proceedings as above stated, we deny these several petitions without expressing any opinion on their merits and without prejudice to the right to apply to the District Court for leave to intervene and to share in the benefits of the decree.

*Decree modified and cause remanded to the District Court for further proceedings in conformity with this opinion, the costs in this court to be equally divided between the parties.*

THE CHIEF JUSTICE took no part in the consideration or the decision of this case.

Mr. Justice McReynolds dissenting.

It seems to me quite clear that the judgment below is wholly wrong. Respondents' complaint should be dismissed.

This suit was brought in 1913, some twenty-five years after those who complain came into possession of all material facts. During that period they were parties or privies to suit after suit—the first begun in 1889 and all unsuccessful—which sought to upset what petitioner had done because of its actual fraud.

The original bill or complaint in the present cause alleges:—"As soon as the terms of the said Reorganization Agreement were announced and published, [1888] S. W. Carey, Cornelius MacArdell, Walter B. Lawrence, plaintiffs' testator, and other stockholders of the Railway Company protested against the terms of the said agreement, claiming that it practically gave the Railway Company to the Southern Pacific Company in fraud of the individual stockholders." "Immediately after the entry of the said Consent Decree of May 4th, 1888, the said Carey, MacArdell, Lawrence and other stockholders of the said Railway Company formed a committee of stockholders to protect themselves from the frauds committed and proposed to be committed by the Southern Pacific Company under the said Reorganization Agreement and Consent Decree, and said committee of stockholders employed as counsel, Frederic R. Coudert, Edward M. Shepard and A. J. Dittenhoefer of New York City, Jefferson Chandler of St. Louis, and later on H. Snowden Marshall, Russell H. Landale, and David Gerber, and from the commencement of their first suit [December, 1889] hereinafter mentioned, to the present day, the firm of Dittenhoefer, Gerber & James has been their attorneys of record."

Having long emphatically condemned, attacked, and sought without success to annul petitioner's action, re-

spondents finally come before a court of equity saying in effect—Although represented by counsel of great eminence we have not heretofore known the law; notwithstanding all solemnly declared to the contrary, we now maintain that petitioner was really acting for us, our trustee indeed; and we wish to share in the plan which it has carried to success against our persistent opposition. Such a claim exhales a very bad odor; and I think the parties presenting it should be dismissed, burdened with an appropriate bill of costs, for two very simple reasons.

First. They are barred by laches. Rational men are presumed to know the law; knowledge of consequent rights and appropriate means of asserting them is necessarily implied from full acquaintance with the facts. Respondents' attempt to rely upon an alleged belated discovery of a well known remedy after years of litigation conducted in full view of all the circumstances, affronts both established principles and common experience. And this is emphasized by the names of distinguished counsel who have continuously represented the minority stockholders since 1888.

"Nothing can call a court of equity into activity but conscience, good faith, and reasonable diligence; and when a party with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights, equity will not aid him." *Hayward* v. *Eliot National Bank*, 96 U. S. 611.

Due diligence in asserting a constructive trust is incompatible with persistent denial of such relationship after full knowledge of all the circumstances and a furious chase for twenty-five years in the opposite direction by the *soi-disant* beneficiary.

Second. Certainly the petitioner never consciously undertook to act as respondents' trustee—for years nobody seems to have thought any such relation existed. When the latter obtained full information of the real facts

[1888], at most, their option was promptly to treat petitioner as their constructive trustee, or to reject that view. And I had supposed in such circumstances, under an elementary rule, failure affirmatively to ratify, approve or adopt the alleged fiduciary's action within a reasonable time amounted to disapproval. A potential *cestui que trust* may not indefinitely speculate on the outcome. In the present case respondents not only failed promptly to approve the action whose benefits they now seek; they deliberately engaged in a long series of actions inconsistent with their present claim; and while they did so petitioner, supposing its title absolute and unquestioned, dealt with the stock accordingly and as it probably would not have done if the present claim had been asserted.