## WEST v. RADIO–KEITH–ORPHEUM (HARRISON THEATRE & REALTY CO., Intervener).

### No. 146.

Circuit Court of Appeals, Second Circuit.

Jan. 15, 1934.

L. Lawrence Green, of New York City (House, Holthusen & McCloskey, Spencer Pinkham, and Lawrence S. Lesser, all of New York City, of counsel), for intervener-appellant.

Cook, Nathan & Lehman, of New York City (Alfred A. Cook, Frederick F. Green-

man, and Arthur Kramer, all of New York City, of counsel), for Keith-Albee-Orpheum Corporation.

Hornblower, Miller, Miller & Boston, of New York City (Nathan L. Miller and Edward C. Bailly, both of New York City, of counsel), for Preferred Stockholders of Keith-Albee-Orpheum Corporation.

William J. Donovan, of New York City (Horace R. Lamb, of New York City, of counsel), for Irving Trust Co. as receiver in equity of defendant-appellee Radio-Keith-Orpheum Corporation.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This appeal involves the validity of an order of the District Court authorizing the Irving Trust Company, as receiver in equity of Radio-Keith-Orpheum Corporation (hereinafter called R. K. O.), to release the claim of R. K. O. against Keith-Albee-Orpheum (hereinafter called K. A. O.) amounting to $2,394,665.73 by surrendering the notes of K. A. O. maturing July 1, 1933, which R. K. O. held therefor. It is contended by the appellant Harrison Theatre & Realty Company, a creditor of R. K. O. in the amount of $440,000, that no showing was made that the release by R. K. O. of this claim of $2,394,665.73 against its amply solvent debtor K. A. O. was justifiable and that the order was, therefore, an abuse of discretion on the part of the District Court.

R. K. O. operated motion picture theaters and was a distributor of motion pictures through subsidiaries. K. A. O. does not distribute pictures, but is engaged in holding stocks of companies which operate motion picture theaters and owns substantially all the common stock of Orpheum Circuit, Inc. (hereinafter called Orpheum), which is in the business of operating theaters. R. K. O. owned about one-seventh of the preferred stock of Orpheum. During the times we are concerned with, R. K. O. owned about one-third of the preferred stock of K. A. O. (the entire preferred stock having a par value of $6,430,400) and substantially all the common stock of that corporation. All, or nearly all, of these shares of preferred and common stock of K. A. O. belonging to R. K. O. were pledged by it with Chemical Bank & Trust Company as trustee under certain trust indentures of R. K. O., whereof the bank was trustee for the bondholders. The bank also held as pledgee of R. K. O. the notes which the latter had acquired from K. A. O. amount-

ing to $2,394,655.73. R. K. O. had guaranteed more than $1,000,000 of obligations of subsidiaries of Orpheum, while K. A. O. had guaranteed no obligations of those subsidiaries. The financial success of Orpheum and the companies which it controlled was specially important to R. K. O., not only because of its guaranties, but also because Orpheum furnished a large market for the motion pictures produced by R. K. O. Indeed, in 1931 and 1932, the theater operating subsidiaries of Orpheum had paid nearly $1,900,000 as license fees or film rentals to R. K. O.'s picture producing subsidiaries. Prior to 1928 Orpheum and its subsidiaries had made huge earnings, but from that time on those earnings lessened and in 1931 and 1932 they suffered losses exceeding $3,500,000. Orpheum, in order to continue operations, had borrowed $1,115,434.23 from R. K. O. during the years 1930 and 1931. The payment of this sum was assumed by K. A. O. as of December 31, 1931, in consideration for the agreement of Orpheum to pay a like amount to K. A. O. In 1932, Orpheum had borrowed the further sum of $1,279,221.50 from K. A. O. which was able to make the loan through funds borrowed by it from R. K. O. Accordingly there was the aggregate amount of $2,394,655.73 due from K. A. O. to R. K. O. evidenced by notes of K. A. O. maturing in 1932. While repayment of the $1,115,434.23 originally advanced to Orpheum by R. K. O. had been assumed by K. A. O., K. A. O. had received nothing for the assumption of this obligation but the indebtedness of Orpheum —a corporation which was suffering severe losses. Though K. A. O. owned the common stock of Orpheum, it was itself controlled by R. K. O. through the ownership of its own common stock by the latter. R. K. O. had a vital interest in the continued existence of Orpheum due both to its guaranties of the obligations of subsidiaries of Orpheum to the extent of over $1,000,000 and to its interest in Orpheum and its subsidiaries as distributors of its pictures. There had been a protest by preferred stockholders of K. A. O. against the assumption by the latter of the liability of $1,115,434.23 on the part of Orpheum to R. K. O. and likewise against the advances of $1,279,221.50 made by K. A. O. from funds borrowed from R. K. O. with the consequent liability of K. A. O. to repay these funds to R. K. O. There had been a threat by these preferred stockholders to institute a suit to set aside the entire indebtedness of K. A. O. to R. K. O. and to compel R. K. O. to accept the indebtedness of Orpheum to K. A. O. in place of that of K. A. O. to R. K. O. on the ground that the latter indebtedness was incurred largely for the benefit of R. K. O. The transactions between R. K. O. and K. A. O. were between corporations having interlocking directors and also between corporations where there was complete control by R. K. O. over K. A. O. through stock ownership. In the circumstances it became a serious question whether the assumption by K. A. O. of Orpheum's liability to R. K. O. of $1,115,434.23 at a time when Orpheum was on the brink of insolvency, and whether the further advance by K. A. O. to Orpheum of $1,279,221.50 were not voidable transactions. Geddes v. Anaconda Mining Co., 254 U. S. 590, 41 S. Ct. 209, 65 L. Ed. 425; Southern Pacific Co. v. Bogert, 250 U. S. 483, 39 S. Ct. 533, 63 L. Ed. 1099; Hyams v. Calumet & Hecla Mining Co. (C. C. A.) 221 F. 529.

We may add that outside of the $2,394,655.73 which had been loaned to Orpheum, as already set forth, K. A. O. loaned $486,030.58 to it in 1932, through funds that were not borrowed from R. K. O. but were its own. The group of objecting preferred stockholders of K. A. O. claimed that this sum and the other advances aggregating $2,394,655.73 were loaned to Orpheum for the benefit of R. K. O. but to the detriment of K. A. O. They insisted that K. A. O. was compelled or induced to incur these obligations only because of the stock control of R. K. O. over it.

The settlement proposed is to be effected by the organization of a new company known as Stadium Theatres Corporation (hereinafter called Stadium) the stock of which is to be owned by the Irving Trust Company as receiver of R. K. O. A note of Stadium for $2,394,655.73 will be made payable to Chemical Bank & Trust Company as trustee under R. K. O.'s indenture to take the place of the notes for a like aggregate, heretofore given by K. A. O. to R. K. O. and deposited by R. K. O. with that bank as security. When the receiver of R. K. O. shall receive from the bank the notes of K. A. O. aggregating $2,394,655.73, held by the bank, the receiver shall mark them paid and deliver them to K. A. O. upon delivery by the latter to Stadium of notes of Orpheum aggregating $2,394,655.73 and all collateral of Orpheum securing the same held by K. A. O. In the event that the amount realized by Stadium upon the Orpheum notes shall be less than $2,394,655.73, any deficiency to the extent of $894,655.73 shall be made up by K. A. O. to Stadium, the alter ego of the receiver of R. K. O.

The net result of carrying out the proposed agreement is that R. K. O. will release K. A. O. from $2,394,655.73 of its indebtedness to R. K. O. in consideration for the transfer by K. A. O. to Stadium of $2,394,655.73 of the indebtedness of Orpheum to K. A. O. and the entire collateral securing the total indebtedness of Orpheum to K. A. O., amounting to $3,001,239.47, with the provision that K. A. O. shall pay Stadium the deficiency up to $894,655.73 in the event that the liquidation of the Orpheum collateral yields less than $2,394,655.73. K. A. O. is thus relieved of its obligation to R. K. O. to the extent of $1,500,000 at all events and the receiver of R. K. O. takes only the risk that the collateral may not realize more than the $894,655.73, instead of having the obligation of K. A. O. to pay the full amount of $2,394,655.73.

Even if we assume that the claim of R. K. O. against K. A. O. (which is to be released completely to the extent of $1,500,000) be valid, there is no serious prejudice to R. K. O. in abandoning it. As a result of the settlement, all the debts of K. A. O. will be wiped out except indebtedness to general creditors of $144,500 and the liability upon the guarantee of $894,655.73. Its assets were of the estimated value of $10,000,000. It had preferred stock outstanding of 64,304 shares which would be redeemed in liquidation at 110, making an aggregate of $7,000,000. Consequently, even if K. A. O. had to meet the full guaranty of $894,655.73, pay its debts of $144,500, and liquidate the preferred stock at $7,000,000, there would apparently be a balance of nearly $2,000,000 applicable to the common stock belonging to R. K. O. The effect of the settlement would be to postpone the $1,500,000 due from K. A. O. to R. K. O. to the rights of the preferred stock, one-third of which preferred stock, however, would belong to R. K. O. Anything thus postponed would, of course, benefit the common stock, of which R. K. O. was the owner. The difference upon liquidation between the rights of R. K. O. under the original set-up and under the settlement would be nil if K. A. O. be worth $10,000,000. But for other reasons R. K. O. might not be prejudiced by the settlement, even should the notes of K. A. O. be entirely valid and enforceable, for it relieves K. A. O. of the necessity of presently raising $2,394,655.73 to pay the receiver. Such a financial transaction would doubtless be embarrassing in times like these and might well result in taking away from R. K. O. any real value in the stock of K. A. O. which it holds by forcing the latter to sell the interest of K. A. O. in Orpheum and its subsidiaries on which R. K. O. has relied for disposal of its motion pictures.

The terms of settlement, with the reasons therefor, were not only set forth by the receiver in its petition, but the court ordered hearings upon notice to the interested parties, in which the appellant was permitted to intervene and take part. The assumption by K. A. O. of the indebtedness of Orpheum to R. K. O. aggregating $1,115,434.23 at a time when Orpheum was seriously running behind was a transaction, the validity of which was exceedingly doubtful. Orpheum had 63,840 shares of preferred stock outstanding of the par value of $6,384,000, none of which belonged to K. A. O. The only interest of the latter in Orpheum was in its common stock which would be subject to these prior claims of $1,115,434.23 for money loaned by R. K. O. which K. A. O. assumed, and rights of the preferred stockholders amounting to $6,384,000, which would aggregate $7,500,000. The subsequent direct advances to Orpheum by K. A. O. for which K. A. O. was indebted to R. K. O. were made when the financial condition of the Orpheum was still more unfavorable. In such circumstances, R. K. O., the company possessing complete stock control over K. A. O., had the burden of showing that transactions which on their face seemed oppressive and undesirable for the preferred stockholders of K. A. O. were in fact fair and equitable. Geddes v. Anaconda Mining Co., 254 U. S. 590, 41 S. Ct. 209, 65 L. Ed. 425. As the record stands, the claims of K. A. O. and its preferred stockholders that the notes which R. K. O. held against it were invalid were exceedingly serious and the validity of the claims proposed to be released was most doubtful.

Under all the conditions, we can see no basis for the contention that the proposed settlement, which seems to be objected to by no one except the appellant, was not a reasonable one. The receiver of R. K. O. recommended its adoption and the appellant, instead of offering proof to show that it was unfair, did nothing but talk at the hearing before the District Judge, who, after listening to argument and giving due consideration to the petition and proposed agreement, properly authorized it to be entered into and performed by the receiver.

The receiver of K. A. O. moves to dismiss the appeal on the ground that the appellant has never intervened. This is not so, for the District Judge granted the motion of Harrison Theatre & Realty Company to in-

tervene by endorsing the words, "Motion granted William Bondy, U. S. D. J.," on the motion papers before the order appealed from was made.

The motion to dismiss the appeal is denied, and the order appealed from is affirmed.