**In re AIRPORT–81 NURSING CARE, INC., Debtor.**

**Bankruptcy No. 3–82–00690.**

United States Bankruptcy Court, E.D. Tennessee.

Jan. 18, 1984.

Robert B. Carter, Johnson City, Tenn., trustee pro se.

Don Mason, Kingsport, Tenn., for Loyce B. and Patsy Franklin.

Jackson C. Raulston, Kingsport, Tenn., for David Leonard Associates, P.C.

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

CLIVE W. BARE, Bankruptcy Judge.

This matter was heard on November 8, 1983, and December 6, 1983, upon the objections of the trustee and David Leonard Associates, P.C., a creditor, to Claim No. 3 filed by Loyce B. Franklin in the amount of $250,000.00.

The first objection alleges that the claim was not timely filed. A preliminary discussion, however, disclosed that the last day for filing claims in this case fell on a Sunday; hence, filing of the claim on the following Monday constituted timely filing. Former Bankruptcy Rule 906; Fed.R.Civ.P. 6(a). Since the disputed claim was filed on the following Monday, the first objection was withdrawn.

The second ground of objection asserts that the proof of claim was executed by Loyce B. Franklin only, while the attached notes totaling $250,000.00 are payable to Loyce Franklin and wife, Patsy Franklin, and that no assignment by Patsy Franklin to Loyce Franklin is shown. Don Mason, attorney for the Franklins, informed the court that he, in effect, filed two claims in the amount of $250,000.00 each, one for Loyce Franklin and one for Patsy Franklin. Mr. Mason submitted an affidavit to this effect and no objections were made to the same. Although this objection was not formally withdrawn, it is stipulated by the parties that only one claim of $250,000.00 is to be considered.

## FINDINGS OF FACT

(1) In the fall of 1978, Lon V. Boyd, Charles M. McNeil, and Loyce Franklin agreed to build a 186-bed convalescent home on a 6.52-acre tract owned by Loyce Franklin and his wife, Patsy Franklin, in Sullivan County, Tennessee, adjacent to Interstate 81 at the Tri-Cities Airport exit. A Tennessee Corporation, Airport-81 Nursing Home, Inc., the debtor herein, was chartered for that purpose. Lon V. Boyd, Charles M. McNeil, and Loyce Franklin were the officers, directors, and shareholders of the corporation.[1]

(2) On August 22, 1978, Loyce and Patsy Franklin transferred to the debtor corporation a 6-acre tract of real property. On October 19, 1978, the Franklins transferred a 0.52-acre contiguous tract to the corporation. The 6-acre tract is land-locked; ingress and egress is available, however, by way of the 0.52-acre tract.

(3) The debtor corporation executed two notes to the Franklins in the total amount of $250,000.00, one note being for $150,000.00 payable in six months, the second note in the amount of $100,000.00 payable in five years. No payment was made by the debtor corporation at the time of the transfer. To secure the notes, the debtor executed a deed of trust on the 6-acre tract, but not the 0.52-acre tract.[2]

(4) Although the affidavit of Loyce Franklin in the deed conveying the property to the debtor recited that the value of the property was $250,000.00, there had been no appraisal of the property. The 6- and 0.52-acre tracts were part of a 43-acre tract originally purchased by the Franklins in 1963 for $14,000.00.

---

1. Franklin held 50% of the stock, Boyd and McNeil 25% each.

2. This deed of trust was not recorded until February 17, 1982, within 90 days of the filing of an involuntary petition in bankruptcy against the debtor. In adversary proceeding No. 3–82–0909 this court avoided the transfer as a preference, 11 U.S.C.A. § 547(b) (1979). (See Judgment entered July 22, 1983.) Thus, any claim the Franklins have in this bankruptcy case is an unsecured claim.

(5) The corporate resolution authorizing the purchase essentially provides as follows:

(a) Resolved that a 6.52 acre tract be purchased from Loyce Franklin and wife Patsy Franklin for the sum of $250,-000.00.

(b) That at least the sum $150,000.00 be paid for this land in the closing of the bond issue and that the corporation issue a note secured by a deed of trust for the payment of the balance.

(c) That a new contract be signed with Cassel Brothers (a wholly owned corporation of Charles M. McNeil) for $1,700,-000.00 for construction of a structure on the site with the proviso that, if the structure can be built for a lesser amount, the overage would be returned to the corporation.

The resolution is signed by Loyce Franklin, Charles M. McNeil, and Lon V. Boyd, "directors and stockholders."

It was also agreed that the deed of trust securing the $250,000.00 indebtedness would not be recorded until after a construction loan in the amount of $100,000.00, also to be secured by a deed of trust, was recorded.[3]

(6) Mr. Boyd, secretary and treasurer of the debtor corporation, testified at the Code § 341 hearing on September 14, 1982, that the property in question was not worth the $250,000.00 which the corporation agreed to pay. When asked by the trustee at the hearing why there was such a huge discrepancy, Mr. Boyd answered—

A At the original conception of this, the idea was that the three of us were going to be involved in it, myself, Mr. Franklin and Mr. McNeil and that the money would be available to borrow the entire sum, 100% of the money on the project and that if it had approved the $250,000.00, Mr. Franklin was to receive that money from his property, I was to make my money off of attorney fees, Mr.

McNeil was to make his profit off of the building contract. That was the original idea behind it, but

Q But the property really isn't worth $250,000.00?

A No sir . . . .[4]

Mr. Boyd further testified that the property had a minimum value of $70,000.00 and a maximum of $120,000.00 to $125,000.00. Although the questions asked of Mr. Boyd apparently referred to the 6-acre tract, it appears that his answers referred to both tracts of land, that is, the 6-acre and 0.52-acre tracts of land.

(7) The verified schedules executed by the debtor on August 26, 1982, signed by "L.B. Franklin, President," and "Lon V. Boyd, Sec. Treas.," reflect the value of the 6-acre tract at $100,000.00, the 0.52-acre "easement" at $15,000.00.

(8) On August 13, 1981, the Secretary of Housing and Urban Development issued a conditional endorsement for insurance under the provision of § 232 of the National Housing Act for the construction of a nursing home in the amount of $3,034,200.00. Attached thereto is a "Supplement to Project Analysis" reflecting "land investment (or cash required for land acquisition)" as $150,000.00.

(9) An appraisal prepared by William A. Miller was introduced. In Mr. Miller's opinion, as of July 19, 1983, the fair market value of the six acres of land was $60,-000.00, the 0.52-acre tract $20,800.00, or a total value for the two tracts of $80,800.00.

(10) Pursuant to order of this court, the trustee sold the two tracts at public auction for the sum of $89,000.00.

(11) No other written appraisals·were introduced. The Franklins, however, introduced an option on a larger tract of land which included the 6-acre tract of land fixing a value of $40,000.00 per acre. The

---

**3.** A $100,000.00 construction loan, obtained from the First National Bank of Sullivan County, was secured by a deed of trust on the 6-acre tract. This deed of trust together with a replacement deed of trust on the 6-acre tract were held by this court to contain defective acknowledgments and were subordinated to the lien rights of the trustee. *In re Airport-81 Nursing Care, Inc.,* 29 B.R. 501, 507 (Bkrtcy.E.D.Tenn.1983).

**4.** See Exh. 1 introduced at the hearing on December 6, 1983.

option included road frontage which the six acres does not have. The option was never exercised.

(12) A letter from Douglas C. Smith, an appraiser from Nashville, Tennessee, was introduced concerning an adjacent 1-acre tract of land. The adjacent tract has road frontage, and the letter fixed a valuation on the property *only* if the nursing home was built. Since the nursing home was not built, the dollar figure given by Mr. Smith as to another tract of land does not establish the value of the land in question.

(13) The court finds that the $250,000.00 price the debtor corporation agreed to pay for the property bore no reasonable relation to the actual value of the property. The corporation was willing to pay Patsy and Loyce Franklin, a stockholder and officer of the corporation an inflated sum since the full amount of the agreed purchase price was to come from a third party lender whose debt would be insured by the Housing and Urban Development Corporation. Mr. Boyd was to receive his compensation through attorney's fees [5] and the third shareholder, Mr. McNeil, was to receive his profit from a building contract.[6]

(14) The court finds the value of the 6.52 acres transferred to the corporation by the Franklins to be $89,000.00, the amount for which the property was sold by the trustee at a public auction.[7]

## CONCLUSIONS OF LAW

(1) Conclusions are limited to the third objection to the claim, that is, that the claim is without consideration.

(2) The sale of the property by the Franklins to the corporation was not an arm's length transaction, Loyce B. Franklin being both a shareholder and officer of the corporation at the time the sale was negotiated. The secretary and treasurer of the corporation, Mr. Boyd, acknowledged that the property in question did not have a value of $250,000,00. The auction sale of the property substantiated Mr. Boyd's minimum and maximum value estimates, in that it sold for a sum within the range of his estimates.

(3) Tenn.Code Ann. § 47–3–408 (1979) provides in part:

"Partial failure of consideration is a defense pro tanto whether or not the failure is an ascertained or liquidated amount."

(4) The bankruptcy estate possesses the benefits of any defense available to the debtor as against an entity other than the estate, including such defenses as statutes of limitations, statutes of frauds, usury, and other personal defenses. 11 U.S.C.A. § 541(e) (1979).

(5) The purchase of the land, not being an arm's length transaction, is without consideration as to that portion of the sale price over and above the actual value of the land.

(6) Courts of bankruptcy are essentially courts of equity and their proceedings inherently proceedings in equity. *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). The Supreme Court on numerous occasions has held that a bankruptcy court has full power to inquire into the validity of any claim asserted against the estate and to disallow it if it is ascertained to be without lawful existence. See *Lesser v. Gray,* 236 U.S. 70, 35 S.Ct. 227, 59 L.Ed. 471 (1915). Further, a trustee may attack a claim against the estate if it is founded upon no real debt.

---

**5.** In the bankruptcy case, Mr. Boyd filed a proof of claim in the amount of $135,000.00 for "legal fees" which, after hearing upon the trustee's objections, was disallowed.

**6.** McNeil's Company, Cassel Brothers, was the subject of a state court liquidation proceeding. Charles M. McNeil filed a voluntary petition in bankruptcy on September 8, 1980, case No. 3–80–01159.

**7.** On January 12, 1984, the trustee filed an adversary proceeding against Patsy Franklin et al, regarding another purported lien on the .52-acre tract, adversary proc. No. 3–84–0010. That action is awaiting answers of the defendants.

[This] equitable power also exists in passing on claims presented by an officer, director, or stockholder in the bankruptcy proceedings of his corporation. The mere fact that an officer, director, or stockholder has a claim against his bankrupt corporation or that he has reduced that claim to judgment does not mean that the bankruptcy court must accord it pari passu treatment with the claims of other creditors. Its disallowance or subordination may be necessitated by certain cardinal principles of equity jurisprudence. A director is a fiduciary. *Twin-Lick Oil Company v. Marbury,* 91 U.S. 587, 588, 23 L.Ed. 328. So is a dominant or controlling stockholder or group of stockholders. *Southern Pacific Company v. Bogert,* 250 U.S. 483, 492, 39 S.Ct. 533, 537, 63 L.Ed. 1099. Their powers are powers in trust. See *Jackson v. Ludeling,* 21 Wall. 616, 624, 22 L.Ed. 492. Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. *Geddes v. Anaconda Copper Mining Company,* 254 U.S. 590, 599, 41 S.Ct. 209, 212, 65 L.Ed. 425. The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside. While normally that fiduciary obligation is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee. For that standard of fiduciary obligation is designed for the protection of the entire community of interests in the corporation—creditors as well as stockholders.

As we have said, the bankruptcy court in passing on allowance of claims sits as a court of equity. Hence these rules governing the fiduciary responsibilities of directors and stockholders come into play on allowance of their claims in bankruptcy. In the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate. And its duty so to do is especially clear when the claim seeking allowance accrues to the benefit of an officer, director, or stockholder. (Footnotes omitted.)

*Pepper v. Litton,* 308 U.S. 295, 306–08, 60 S.Ct. 238, 245–46, 84 L.Ed. 281 (1939).

(7) The Franklin claim will be allowed as an unsecured claim in the amount of $89,-000.00, the actual value of the property transferred to the debtor corporation.